[No. G037750. Fourth Dist., Div. Three. June 27, 2007.]

CONTEMPORARY SERVICES CORPORATION et al., Plaintiffs and Appellants, v.
STAFF PRO INC. et al., Defendants and Respondents.

**Counsel**

Philipson & Simon, Jeffrey S. Simon, David A. Simon; Martin & McCormick, Kathy J. McCormick and John D. Martin for Plaintiffs and Appellants.

Gibbs Giden Locher & Turner, James M. Gansinger; Baer & Troff and Eric L. Troff for Defendants and Respondents.

**Opinion**

**FYBEL, J.—**

### INTRODUCTION

Contemporary Services Corporation (CSC) and its president Damon Zumwalt (collectively, plaintiffs) appeal from the judgment entered after the trial court

granted Staff Pro Inc. and its president Cory Meredith's (collectively, defendants) special motion to strike plaintiffs' first amended complaint under Code of Civil Procedure section 425.16, commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (All further statutory references are to the Code of Civil Procedure unless otherwise specified.) Plaintiffs contend the trial court erred by granting the motion because (1) each claim alleged in the first amended complaint was based on statements and conduct which fell within the commercial speech exemption set forth in section 425.17, subdivision (c), and thus was immune from challenge under the anti-SLAPP law; and (2) plaintiffs demonstrated a probability of prevailing on each claim contained in the first amended complaint. Plaintiffs also contend the trial court abused its discretion by denying their request to conduct limited discovery, in the form of taking Meredith's deposition, while defendants' motion was pending.

We affirm. Although the alleged statements and conduct were critical of a business competitor, the commercial speech exception set forth in section 425.17, subdivision (c), does not apply. Plaintiffs failed to carry their burden of demonstrating a probability of prevailing on any of their claims. The trial court did not err by denying plaintiffs' request to take Meredith's deposition because plaintiffs failed to file a noticed motion seeking such limited discovery pending defendants' special motion to strike, as required by section 425.16, subdivision (g).

## BACKGROUND[1]

CSC and Staff Pro are competitors in the business of providing event staffing and audience management services to public and private venue operators and hosts in California. CSC and Staff Pro have an extensive litigious history together. Over the course of the past six years, CSC and Staff Pro have prosecuted and defended several lawsuits against each other in San Diego, Los Angeles and Orange Counties.

### I.

#### CSC INITIATES LOS ANGELES ACTION; STAFF PRO INITIATES UNDERLYING ACTION; STAFF PRO VOLUNTARILY DISMISSES COMPLAINT IN UNDERLYING ACTION.

The first lawsuit relevant to this appeal was filed in 2001 by CSC against Staff Pro, Meredith, and several other individuals, in Los Angeles County

---

[1] The facts contained in this background section are based on the declarations and evidence submitted by the parties in connection with defendants' special motion to strike.

Superior Court (the Los Angeles action). CSC's first amended complaint in the Los Angeles action alleged claims for below-cost pricing and violations of the Unfair Practices Act (Bus. & Prof. Code, § 17000 et seq.).

In June 2004, defendants filed a complaint in Los Angeles County Superior Court against plaintiffs for defamation and unfair competition (the underlying action). In October 2004, CSC filed a cross-complaint against defendants in the underlying action for defamation and violation of Business and Professions Code section 17200. The Los Angeles County Superior Court issued an order stating the Los Angeles action and the underlying action were related cases within the meaning of rule 7.3(f) of the Superior Court of Los Angeles County, Local Rules.

During the litigation of the Los Angeles action, CSC took the depositions of three of Staff Pro's biggest clients: Kevin Johnstone, director of trade shows for the National Association of Music Merchants in San Diego; David Gordon, general manager of the Long Beach Convention Center; and Timothy Ryan, president of Anaheim Arena Management, Inc. During those depositions, CSC's attorney, David Simon, showed each deponent various declarations, each of which had been signed by one of seven former Staff Pro employees who had been " 'let go' " from Staff Pro after they were suspected of possible involvement in a theft ring. The declarations stated, inter alia, that the former employees had been instructed by Staff Pro to overbill clients.

During certain of the ex-employees' depositions, some of them admitted they did not have personal knowledge of the statements asserted in their respective declarations. One of those former employees, Larry Lopez, invoked the Fifth Amendment to the United States Constitution and refused to answer questions about the truth of the matters asserted in his declaration. Lopez admitted he had been paid $2,000 by CSC to sign his declaration, and he further testified that another former Staff Pro employee, Ranel Caldeo, had been paid $1,500 by CSC to sign a similar declaration.

In December 2004, the assigned discovery referee in the Los Angeles action, retired superior court Judge Eli Chernow, found "CSC's conduct of discovery in this case has been conducted as a form of unfair competition to present to StaffPro clients derogatory information about StaffPro that is not reasonably designed to elicit factual information relevant to this lawsuit." The referee ordered CSC to pay sanctions in the amount of $9,900 for its conduct. On June 27, 2005, the trial court in the Los Angeles action adopted the discovery referee's order.

Defendants filed a motion for terminating sanctions in the Los Angeles action based on allegations CSC had stolen or authorized the theft of Staff

Pro documents. On June 30, 2005, the trial court denied defendants' motion for terminating sanctions, but stated, "CSC's receipt of a disc containing documents stolen from Staff Pro warrants the imposition of certain evidentiary sanctions . . . . [¶] Larry Lopez testified at deposition that he turned the disc over to Plaintiff's counsel in September 2003; Mr[.] Simon (Plaintiff's counsel) states that he received it 'shortly before June 2, 2004'. He says he got it from 'his client', but he doesn't say who actually gave it to him, or how, or when, or the circumstances. Lopez admits that Simon never asked how he got the disc or what was on it, but took the 5th when asked about what he told Simon." The minute order further stated, "Lopez invoked the 5th amendment when asked whether Mr. Simon has ever offered him any money. He also invoked the 5th when queried about whether he had ever asked Mr. Simon for money. He invoked the 5th when asked whether Simon ever requested that he copy Staff Pro material. Mr. Simon's failure to address these specific issues in his declaration in opposition to the motion is very troubling, to say the least." The court imposed evidentiary sanctions against CSC, and further ordered CSC and its counsel to pay Staff Pro's reasonable attorney fees and costs incurred in "bringing the conduct of CSC and its counsel before the Court."

Trial in both the Los Angeles action and the underlying action was scheduled to begin March 13, 2006. The Los Angeles action could not be continued because CSC was up against the five-year failure to prosecute rule under section 583.310. According to Staff Pro's counsel, Staff Pro was facing "not only the enormous costs of preparing its defense in the Los Angeles Action, but needed to both conduct and respond to a tremendous amount of discovery in the Underlying Action. Outstanding were CSC's demand for further responses to eighteen special interrogatories, Staff Pro's responses to another sixty[-]two special interrogatories, and three depositions which CSC had noticed. At the same time, Staff Pro was contending that CSC had failed to properly respond to two hundred and thirty[-]four special interrogatories and Staff Pro needed to notice several depositions. [¶] . . . Defendants did not have the financial resources to prepare for and try both the Los Angeles Action and the Underlying Action at the same time."

After consulting with defendants' counsel, Meredith agreed to voluntarily dismiss defendants' complaint in the underlying action in order to "concentrate [d]efendants' energies and resources on the impending Los Angeles Action." On January 12, 2006, defendants' complaint in the underlying action was dismissed without prejudice.

Meredith declared that at the time of the dismissal, he believed the underlying action was valid. Defendants' counsel further stated, "[a]t no time did I ever form the professional opinion that Staff Pro's and Mr. Meredith's Complaint for Defamation in the Underlying Action would not succeed."

## II.

### Meredith Sends E-mail to Customers Regarding Status of Litigation

During the "first quarter of 2006," Meredith drafted and sent an e-mail to nine individuals. The e-mail stated, "[d]ue to your involvement with this case, I wanted to update you on the court[']s findings." The e-mail further stated that (1) "[i]n an effort to create evidence CSC paid ex-Staff Pro employees to make false statements in declarations [which] . . . were then presented to Staff Pro's clients in an effort to create doubt in Staff Pro's clients' minds"; (2) CSC uses the courts as a weapon against its competitors and has made "baseless accusations" against defendants; (3) CSC was found by a court as having used a lawsuit against Staff Pro as a form of unfair competition; (4) CSC was allowed to go on a " 'fishing' expedition for facts" and allowed to copy over 500,000 of Staff Pro's documents, but refused to provide any meaningful discovery to Staff Pro, and was sanctioned for its conduct in discovery; (5) the court granted Staff Pro's motion for summary adjudication in the Los Angeles action on the claim of predatory pricing; (6) Staff Pro was awarded additional attorney fees as sanctions against CSC in the Los Angeles action for CSC's discovery abuses and "its involvement in the theft of Staff Pro internal documents from Staff Pro's headquarters"; and (7) defendants are pleased that the court "realized CSC's abuse of the legal system" and "[n]ow that these unjust accusations that have forced us to expend massive amounts of money and time are behind us, Staff Pro looks forward to re-building and utilizing our resources to better serve our clients."

Meredith declared the purpose of his e-mail was to "explain the nature of the Los Angeles Action to each of the above persons, to inform them of the status of this case and the recent court rulings, to give them some idea as to how their testimony and production of documents (or Staff Pro's production of records pertaining to their businesses) had been used, to give these persons some level of comfort that it was unlikely any further testimony would be needed from them (based on my opinions and understanding as a lay person as to the impact of the court rulings) and, lastly, to apologize for any disruption to their business that occurred as a result of being 'dragged into' the Los Angeles Action because of their connection to Staff Pro."

## III.

### CSC Dismisses Cross-complaint in Underlying Action and Initiates the Instant Action.

On January 24, 2006, CSC requested dismissal of its cross-complaint without prejudice in the underlying action. On that same day, plaintiffs filed

the instant lawsuit in Orange County Superior Court against defendants. The first amended complaint alleged claims for (1) malicious prosecution, (2) abuse of process, (3) defamation, (4) intentional interference with economic advantage, and (5) negligent interference with economic advantage.

Plaintiffs' first and second causes of action for malicious prosecution and abuse of process, respectively, were based on defendants' conduct of initiating the underlying action against plaintiffs. The third cause of action for defamation was based on allegations defendants made defamatory statements about plaintiffs to "mutual customers" of CSC and Staff Pro. The allegations included the following: defendants falsely stated (1) plaintiffs created evidence and paid former Staff Pro employees to provide false, perjurous testimony; (2) a court "had made certain 'rulings' which at the time of the representations, the 'Court' had not made or adopted and were merely a recommendation of a discovery referee"; and (3) plaintiffs "have engaged in unfair business tactics and schemes designed to put [d]efendants out of business." Plaintiffs' fourth and fifth causes of action for intentional and negligent interference with prospective economic advantage were entirely based on the allegations of the first three causes of action.

## IV.

### DEFENDANTS' SPECIAL MOTION TO STRIKE FIRST AMENDED COMPLAINT IN INSTANT ACTION; PLAINTIFFS' EX PARTE APPLICATION SEEKING LIMITED DISCOVERY IS DENIED; DEFENDANTS' SPECIAL MOTION TO STRIKE IS GRANTED.

In March 2006, defendants filed a special motion to strike, challenging each cause of action in the first amended complaint, pursuant to section 425.16. While defendants' motion was pending, plaintiffs applied ex parte for an order that would continue the hearing on the motion and permit plaintiffs to take Meredith's deposition. Although plaintiffs' ex parte application asked for alternative relief in the form of an order shortening time on a noticed motion to take Meredith's deposition while defendants' special motion to strike was pending, plaintiffs failed to provide defendants sufficient notice that they were seeking such alternative relief. The trial court denied plaintiffs' ex parte application.

The trial court granted defendants' special motion to strike, stating that with regard to the allegations of the first amended complaint, "[t]he statements and conduct are not commercial speech and each cause of action falls within the protection of the anti-SLAPP statute. Plaintiffs have failed to establish a probability of prevailing on any one cause of action." The trial court awarded defendants $6,384 in attorney fees. Judgment was entered, and plaintiffs appealed.

Defendants filed a request for judicial notice, asking this court to take judicial notice of five documents filed in the Los Angeles action. Plaintiffs filed an opposition to defendants' request.

## DISCUSSION

## I.

### GOVERNING STATUTORY PROVISIONS AND STANDARD OF REVIEW.

██ Section 425.16 provides for a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "The Legislature enacted the anti-SLAPP statute to protect defendants, including corporate defendants, from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances." (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 235 [118 Cal.Rptr.2d 313].)

In analyzing a section 425.16 motion, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The moving defendant meets this burden by showing the act underlying the plaintiff's cause of action comes within section 425.16, subdivision (b)(1). (*Equilon Enterprises v. Consumer Cause, Inc., supra,* at p. 67.) If the defendant meets this initial burden, the burden then shifts and the plaintiff must show a probability of prevailing on the claim. (*Ibid.*) The plaintiff must demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

We review de novo whether section 425.16 protects the subject speech and whether plaintiffs demonstrated a probability they would prevail on their claims. (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 44 [134 Cal.Rptr.2d 420].)

## II.

### The Conduct and Speech Alleged in the First Amended Complaint as the Basis for Plaintiffs' Claims Do Not Fall Within the Commercial Speech Exemption Defined in Section 425.17, Subdivision (c).

Plaintiffs argue the trial court erred by granting defendants' anti-SLAPP motion because "the first amended complaint . . . and each cause of action therein, is exempted from the anti-SLAPP law by . . . section 425.17[, subdivision] (c)." Section 425.17, subdivision (c) "creates an exception to the special motion to strike screening provision for specified claims against business entities." (*Sunset Millennium Associates, LLC v. LHO Grafton Hotel, L.P.* (2006) 146 Cal.App.4th 300, 312 [52 Cal.Rptr.3d 828].)

■ Section 425.17, subdivision (c) provides in relevant part: "Section 425.16 does not apply to any cause of action brought against a person primarily engaged in the business of selling or leasing goods or services, including, but not limited to, insurance, securities, or financial instruments, arising from any statement or conduct by that person if both of the following conditions exist: [¶] (1) The statement or conduct consists of representations of fact about that person's or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services. [¶] (2) The intended audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer." A special motion to strike may only be denied pursuant to section 425.17, subdivision (c) when both clauses (1) and (2) apply. (*Sunset Millennium Associates, LLC v. LHO Grafton Hotel, L.P., supra*, 146 Cal.App.4th at p. 312.)

The record shows defendants are primarily engaged in the business of selling event staffing services within the meaning of section 425.17, subdivision (c). The first amended complaint is based on defendants' conduct of filing their complaint in the underlying action and the statements contained in Meredith's 2006 e-mail. Defendants' act of filing the underlying action for defamation and unfair competition does not constitute "representations of fact about [defendants'] or a business competitor's business operations, goods, or services, that is made for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the [defendants'] goods or services" to ultimately influence an actual or potential customer within the meaning of section 425.17, subdivision (c).

■ Meredith's e-mail was directed at actual or potential customers who had some involvement in at least the Los Angeles action. The e-mail, however, did not contain statements regarding defendants' or plaintiffs' "business operations, goods, or services." The e-mail is certainly critical of plaintiffs' litigation tactics and provides a summary of what had transpired in the Los Angeles action. But plaintiffs are "primarily engaged" in the business of providing event staffing services; they are not in the "business" of litigating claims against defendants. The record shows the e-mail was sent in order to "set the record straight" with regard to plaintiffs' allegations against defendants and not to obtain approval for, promote, or secure business for defendants' event staffing services. (See *Sunset Millennium Associates, LLC v. LHO Grafton Hotel, L.P., supra*, 146 Cal.App.4th 300, 313 [commercial speech exemption inapplicable to statements by hotel operator in opposition to environmental approval of a nearby project—"Defendant operates a hotel—it is not an environmental consulting agency"].)

This case is distinguishable from *Brill Media Co., LLC v. TCW Group, Inc.* (2005) 132 Cal.App.4th 324 [33 Cal.Rptr.3d 371], in which bondholders, in the business of financial management, stood to financially gain from the default of the issuer. (*Id.* at pp. 332–333.) In an effort to prevent the issuer from raising sufficient capital to be able to make bond payments and to force its default, the bondholders made statements, some in violation of a confidentiality agreement, which sabotaged the issuer's attempt to sell off certain of its interests to prospective purchasers. (*Id.* at pp. 332–336.) Consequently, the issuer was unable to consummate the sale and raise sufficient capital to make the bond payments. (*Id.* at p. 336.) The bondholders in turn initiated involuntary bankruptcy proceedings upon the issuer's default. (*Id.* at pp. 336, 338.) The court concluded the defendants' statements and act of initiating involuntary bankruptcy proceedings under these circumstances fell within the commercial speech exemption under section 425.17, subdivision (c), and thus the bondholders could not challenge the issuer's complaint against them via a special motion to strike. (*Brill Media Co., LLC v. TCW Group, Inc., supra*, at p. 342.)

The trial court did not err by concluding the commercial speech exemption was inapplicable in this case.

III.

DEFENDANTS MET THEIR BURDEN OF DEMONSTRATING THE ACTS UNDERLYING PLAINTIFFS' CAUSE OF ACTION AROSE FROM PROTECTED ACTIVITY.

■ A defendant can meet his or her burden of making a threshold showing that a cause of action is one arising from protected activity by

demonstrating the acts underlying the plaintiff's cause of action fall within one of the categories of section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

Section 425.16, subdivision (e) provides in relevant part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; [and] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."

Defendants have met their burden of showing that plaintiffs' claims are based on conduct and statements protected by the anti-SLAPP law. Plaintiffs' claims are based on defendants' acts of filing the complaint in the underlying action and Meredith's e-mail. Defendants' act of filing the complaint in the underlying action squarely falls within section 425.16, subdivision (e)(1).

Meredith's e-mail, on the other hand, constitutes a litigation update, which describes the parties' contentions and court rulings, and is directed to individuals who had some involvement in the parties' litigation. "Both section 425.16 and Civil Code section 47 are construed broadly, to protect the right of litigants to ' "the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions." ' [Citations.] Thus, it has been established for well over a century that a communication is absolutely immune from any tort liability if it has ' "some relation" ' to judicial proceedings." (*Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th, 1, 5–6 [39 Cal.Rptr.3d 547] ["Because one purpose of the letter was to inform members of the association of pending litigation involving the association, the letter is unquestionably 'in connection with' judicial proceedings [citation] and bears ' "some relation" ' to judicial proceedings"].)

The trial court therefore correctly concluded the e-mail falls within the parameters of section 425.16, subdivision (e)(2) in that it was made "in connection with an issue under consideration or review by a . . . judicial body."

As defendants met their burden of showing the conduct and speech underlying plaintiffs' claims came within section 425.16, subdivision (b)(1), the burden shifted to plaintiffs to show a probability of prevailing on the merits of their claims.

IV.

PLAINTIFFS FAILED TO CARRY THEIR BURDEN OF SHOWING
PROBABILITY OF PREVAILING ON THEIR CLAIMS.

Plaintiffs contend the trial court erred by granting defendants' special motion to strike because plaintiffs met their burden of showing a probability of prevailing on each of their claims. For the reasons discussed *post*, we disagree.

### A. *Malicious Prosecution*

**(6)** The elements of a cause of action for malicious prosecution are (1) a favorable determination on the merits of the underlying action, (2) which was brought without probable cause, and (3) which was initiated with malice. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871 [254 Cal.Rptr. 336, 765 P.2d 498].) The record shows plaintiffs are unable to establish they obtained a favorable determination on the merits of the underlying action.

Here, defendants voluntarily dismissed the complaint in the underlying action. In order for a termination of a lawsuit to be considered favorable with regard to a malicious prosecution claim, the termination must reflect on the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit. (*Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393].) The California Supreme Court stated, "[i]t is apparent 'favorable' termination does not occur merely because a party complained against has prevailed in an underlying action. While the fact he has prevailed is an ingredient of a favorable termination, such termination must further reflect on his innocence of the alleged wrongful conduct. If the termination does not relate to the merits—reflecting on neither innocence of nor responsibility for the alleged misconduct—the termination is not favorable in the sense that it would support a subsequent action for malicious prosecution." (*Id.* at p. 751; see *Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th, 336, 342 [9 Cal.Rptr.3d 97, 83 P.3d 497].)

" 'A termination [by dismissal] is favorable when it reflects "the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant." ' [Citation.] . . . [¶] . . . The focus is not on the malicious prosecution plaintiff's opinion of his *innocence*, but on the opinion of the dismissing party." (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 881 [6 Cal.Rptr.2d 151].) "The test is whether or not the termination tends to indicate the innocence of

the defendant or simply involves technical, procedural or other reasons that are not inconsistent with the defendant's guilt." (*Ibid.*)

Plaintiffs have not shown that the dismissal of the complaint in the underlying action reflects their innocence of the misconduct alleged therein. Because defendants' complaint in the underlying action was not decided on the merits, we review the reasons why it was dismissed. (*Oprian v. Goldrich, Kest & Associates* (1990) 220 Cal.App.3d 337, 343 [269 Cal.Rptr. 429].)

Here, the record shows defendants could not afford to pursue the matter, not that they lost faith in the merit of their claims. The record does not show defendants sustained any adverse rulings in the case, or otherwise had reason to believe their claims would be unsuccessful. In *Oprian v. Goldrich, Kest & Associates, supra*, 220 Cal.App.3d 337, the appellate court held that the voluntary dismissal of a complaint to avoid further fees and costs and the inconvenience of a second trial did not constitute a termination in the defendant's favor. (*Id.* at p. 345.) The *Oprian* court observed, "[i]t would be a sad day indeed if a litigant and his or her attorney could not dismiss an action to avoid further fees and costs, simply because they were fearful such a dismissal would result in a malicious prosecution action. It is common knowledge that costs of litigation, such as attorney's fees, costs of expert witnesses, and other expenses, have become staggering. The law favors the resolution of disputes. 'This policy would be ill-served by a rule which would virtually compel the plaintiff to continue his litigation in order to place himself in the best posture for defense of a malicious prosecution action.' " (*Id.* at pp. 344–345.)

Plaintiffs argue defendants dismissed the complaint in the underlying action because Meredith wanted to avoid being deposed because his deposition testimony would necessarily reveal defendants' claims lacked merit. Plaintiffs produced evidence that on January 9, 2006, defendants' counsel informed plaintiffs' counsel that Meredith could not be deposed on January 10 because he had the flu. Plaintiffs submitted the declaration of one of CSC's employees, stating that on January 9 at 3:00 p.m., the employee saw Meredith at the Long Beach Convention Center taking part in a response to a request for a bid proposal. Defendants' complaint in the underlying action was dismissed on January 12.

Meredith, however, filed a declaration stating that he woke up on January 9, 2006, with the flu, went to see his doctor, and was prescribed bed rest. Meredith stated he did not believe he would be well enough to give an all-day deposition on January 10 under the circumstances, and so he contacted his counsel to ask whether the deposition could be rescheduled. He further stated that he went to the Long Beach Convention Center for one hour

during the afternoon of January 9, because one of Staff Pro's major clients, the general manager of the center, told Meredith that he needed to be there for the walk-through of the facility before Staff Pro bid on providing event staffing services. After the walk-through, Meredith stated he returned home and went to bed. Defendants also submitted the declaration of Meredith's physician, stating that he saw Meredith in his office on the morning of January 9 and that in his professional opinion Meredith had a "generalized flu like infection." He advised Meredith to go home and get plenty of bed rest.

We do not infer from the evidence in the record that defendants' complaint in the underlying action was dismissed because Meredith did not want to be deposed, much less infer he did not want to be deposed because his testimony would show defendants' claims lacked merit. The evidence shows Meredith requested to reschedule his deposition because he had the flu. Plaintiffs' speculation that the complaint was dismissed to avoid Meredith's deposition because it would reveal defendants' claims were meritless does not constitute a prima facie showing of facts demonstrating that plaintiffs sustained a favorable termination on the merits of the underlying action.

Plaintiffs also argue that they requested the trial court to take judicial notice of documents filed in unrelated lawsuits involving Staff Pro against plaintiffs. In particular, plaintiffs argue that Staff Pro had previously voluntarily dismissed claims against CSC after CSC filed a motion for sanctions under section 128.7. The record does not show whether the trial court granted plaintiffs' request for judicial notice. Even assuming the trial court had granted the request, court records showing that Staff Pro voluntarily dismissed claims against CSC in unrelated cases, which might have constituted a favorable termination on the merits as to CSC, have no bearing on whether the voluntary dismissal in the underlying action similarly constituted a favorable termination on the merits as to plaintiffs.

Because plaintiffs failed to make a prima facie showing of facts sufficient to prove the dismissal of the complaint in the underlying action constituted a favorable termination on the merits, they have failed to show a probability of prevailing on the malicious prosecution claim. We therefore do not need to determine whether defendants demonstrated a probability of establishing the remaining elements of malicious prosecution.

### B. Abuse of Process

Plaintiffs argue in their opening brief that the motion to strike should not have been granted as to any of the claims contained in the first amended complaint because they showed a probability of prevailing on each of them. They do not, however, offer any argument in their appellate briefs regarding a probability of prevailing on the abuse of process claim.

The California Supreme Court has stated, "[t]he relevant California authorities establish, however, that while a defendant's act of improperly instituting or maintaining an action may, in an appropriate case, give rise to a cause of action for malicious prosecution, the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 [232 Cal.Rptr. 567, 728 P.2d 1202].) Plaintiffs' abuse of process claim is based on the allegation defendants "misused the litigation process by filing a frivolous lawsuit against [p]laintiffs." Plaintiffs have therefore failed to carry their burden of a probability of success with regard to the abuse of process claim.

## C. Defamation

Plaintiffs' claim for defamation is based on assertions made by Meredith in his e-mail. In their opening brief, plaintiffs rely on the following three passages from Meredith's e-mail in an effort to establish a prima facie showing of prevailing on their defamation claim: (1) "My personal opinion is that most everyone in the industry knows that CSC uses the courts as a weapon against its competitors"; (2) "I thank you for taking more of your valuable time to read this letter, but I sincerely believe that the record must be set straight concerning CSC's conduct and the baseless accusations that CSC has made against us"; and (3) Staff Pro was awarded sanctions for "CSC's discovery abuses and its involvement in the theft of Staff Pro internal documents from Staff Pro's headquarters."

Even assuming each of those statements, as set forth in the context of an e-mail providing an update of the status of litigation, is not privileged under Civil Code section 47, subdivision (b), none of them is sufficient to support a defamation cause of action against defendants.

In *Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385 [10 Cal.Rptr.3d 429], a panel of this court stated, "the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." Neither Meredith's comment that his "personal opinion is that most everyone in the industry knows that CSC uses the courts as a weapon against its competitors" nor his statement that "I sincerely believe that the record must be set straight concerning CSC's conduct and the baseless accusations that CSC has made against us" could be construed as a declared or an implied provable assertion of fact.

Meredith's comment that Staff Pro was awarded sanctions for "CSC's discovery abuses and its involvement in the theft of Staff Pro internal

documents from Staff Pro's headquarters" is true. Although the trial court stated that Staff Pro did not prove CSC or its attorneys actually stole or authorized the theft of Staff Pro's documents, the court considered CSC's and its counsel's receipt of stolen Staff Pro documents "to be severe" and worthy not only of evidentiary sanctions, but also monetary sanctions in the form of paying Staff Pro reasonable attorney fees and costs it incurred "in bringing the conduct of CSC and its counsel before the Court." Consequently, Meredith's statement that CSC had some involvement in the theft of Staff Pro documents is true. (*Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1553 [33 Cal.Rptr.3d 145] [truth is complete defense to defamation claim].)

Plaintiffs have therefore failed to carry their burden of showing a probability they would prevail on their defamation claim against defendants.

### D. Intentional and Negligent Interference with Prospective Economic Advantage

██ In order to prove intentional or negligent interference with prospective economic advantage, plaintiffs must show defendants engaged in conduct that was wrongful by some legal measure other than the fact of the interference itself. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153–1154 [131 Cal.Rptr.2d 29, 63 P.3d 937].) The same conduct (defendants' filing of the complaint in the underlying action and Meredith's e-mail) is alleged as the basis for plaintiffs' interference with prospective economic advantage claims. As discussed *ante*, plaintiffs have failed to show a probability of establishing this conduct was "wrongful," as they have failed to show this conduct could serve as the basis for their malicious prosecution, abuse of process, or defamation claims.

### V.

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY DENYING PLAINTIFFS' EX PARTE APPLICATION.

After defendants filed the special motion to strike, plaintiffs applied ex parte for an order (1) continuing the hearing on defendants' special motion to strike and (2) permitting the taking of Meredith's deposition or, in the alternative, for shortening time for a hearing on a motion for an order allowing plaintiffs to take Meredith's deposition. The trial court denied plaintiffs' ex parte application without stating a reason. Plaintiffs contend the trial court abused its discretion in doing so.

Section 425.16, subdivision (g) provides, "[a]ll discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant

to this section. The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion. The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision."

"We review for abuse of discretion the trial court's decision as to whether a plaintiff has complied with the requirements of section 425.16, subdivision (g) to merit discovery prior to a hearing on the motion to strike. [Citations.] 'Under this standard the reviewing court will not disturb the trial court's decision unless it "has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' [Citation.]" (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1247 [132 Cal.Rptr.2d 57].)

■ Here, plaintiffs sought an order ex parte that both continued the hearing on defendants' special motion to strike and permitted plaintiffs to depose Meredith, notwithstanding the stay on discovery imposed pursuant to section 425.16, subdivision (g). Section 425.16, subdivision (g), however, requires that requests to conduct limited discovery pending a hearing on a special motion to strike must be in the form of a noticed motion. (See, e.g., *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,* *supra,* 106 Cal.App.4th 1219, 1247–1248 [plaintiff's limited discovery request "was not authorized under section 425.16, subdivision (g) because it was not made by noticed motion"].)

Plaintiffs contend that notwithstanding the noticed motion requirement of section 425.16, subdivision (g), the trial court abused its discretion in denying their ex parte application because they "asked, in the alternative, that the Court shorten time for a hearing on a noticed motion to permit the discovery requested." But in giving notice to defendants of their ex parte application as required under former rule 379 of the California Rules of Court, plaintiffs did not include their alternative request for an order shortening time.[2]

Plaintiffs' counsel, John Martin, filed a declaration in support of the ex parte application, in which he stated, "[o]n April 5th, 2006, at approximately 9:00 a.m. I telephoned Eric L. Troff for the purpose of giving Notice of this firm's intention to appear in this department for the purpose of making an ex parte application for an Order permitting the taking of the Deposition of Cory Meredith and for an Order continuing the Defendant's presently pending

---

[2] Former rule 379(e)(2) of the California Rules of Court, which was in effect at the time plaintiffs submitted their ex parte application, stated in relevant part, "[e]very ex parte application must be accompanied by a declaration regarding notice that states: [¶] (A) the notice given, including the date, time, manner, and name of the party informed, *the relief sought,* any response, and whether opposition is expected . . . ." (Italics added.)

Special Motion to Strike in order to allow time to take the deposition of Mr. Meredith. Although I did not reach Mr. Troff, I did leave a message on his voice mail with this information." Martin further stated in his declaration that after he left this voicemail message, he faxed a letter to Troff, which stated in relevant part: "This shall confirm my telephone call of a short while ago wherein I left a message on your voicemail informing you that this firm would be appearing tomorrow morning . . . for the purpose of making an *ex parte* application for an Order permitting the taking of the deposition of Cory Meredith and for a continuance of your firm's presently pending Special Motion to Strike in order to allow time for the taking of Mr. Meredith's deposition."

In sum, the trial court did not abuse its discretion by refusing to grant an ex parte application seeking permission to conduct limited discovery when section 425.16, subdivision (g) unequivocally requires a noticed motion for such requests, or by refusing to grant plaintiffs' alternative request for an order shortening time on such a noticed motion even though plaintiffs failed to sufficiently apprise defendants of that request.

We do not need to reach the question whether plaintiffs' ex parte application otherwise set forth sufficient "good cause" within the meaning of section 425.16, subdivision (g) to support the request to take Meredith's deposition while defendants' special motion to strike was pending.

VI.

REQUEST FOR JUDICIAL NOTICE.

During the pendency of this appeal, defendants filed a request for judicial notice, asking this court to judicially notice (1) an order in the Los Angeles action deeming the Los Angeles action and the underlying action to be related; (2) an order of the Court of Appeal, Second Appellate District, Division Four, filed April 25, 2006, discharging the alternative writ earlier issued by the court and summarily denying CSC's writ petition in the Los Angeles action with regard to the trial court's granting of Staff Pro's motion for summary adjudication in the Los Angeles action; (3) an order, filed June 17, 2006, in the Los Angeles action denying CSC discovery sanctions against Staff Pro; (4) the judgment in the Los Angeles action against CSC and in favor of defendants, entered on March 12, 2007; and (5) the discovery referee's proposed order in the Los Angeles action, recommending Staff Pro's discovery motion be granted and Staff Pro be awarded its attorney fees and costs in the amount of $24,816.25.

As discussed *ante*, we conclude each of plaintiffs' claims was subject to a special motion to strike and plaintiffs failed to carry their burden of showing

a probability of prevailing on those claims. Defendants' request for judicial notice is therefore denied as moot.

## DISPOSITION

The judgment is affirmed. Respondents shall recover costs on appeal.

Sills, P. J., and Aronson, J., concurred.