Filed 3/28/14  Ryan v. DeCaprio CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TIMOTHY M. RYAN et al., | |
| Cross-complainants and Respondents, | G048233 |
| v. | (Super. Ct. No. 30-2012-00612863) |
| BETH DeCAPRIO et al., | O P I N I O N |
| Cross-defendants and Appellants. | |

Appeal from an order of the Superior Court of Orange County, David R. Chaffee, Judge.  Affirmed.  Motion to enforce discovery stay.  Denied as moot.

Brack & Mason, Lindsay R. Brack and Susan L. Mason for Cross-defendants and Appellants.

The Ryan Firm, Timothy M. Ryan and Michael W. Stoltzman, Jr., for Cross-complainants and Respondents.

\*          \*          \*

INTRODUCTION

The Grace Foundation of Northern California (The Grace Foundation) filed a first amended complaint containing claims for, inter alia, quantum meruit, fraud, breach of fiduciary duty, legal malpractice, and indemnification against Attorney Timothy M. Ryan and his law firm, The Ryan Firm (the law firm). Ryan and the law firm filed a cross-complaint against The Grace Foundation and its executive director, Beth DeCaprio, claiming intentional interference with contract, defamation, and trade libel. DeCaprio and The Grace Foundation filed an anti-SLAPP[1] motion to strike the cross-complaint pursuant to Code of Civil Procedure section 425.16, which the trial court denied. (All further statutory references are to the Code of Civil Procedure unless otherwise specified.) DeCaprio and The Grace Foundation contend the trial court erred because the cross-complaint arose out of protected activity within the meaning of section 425.16, and Ryan and the law firm failed to establish a reasonable probability that they would prevail.

We affirm. We assume, without deciding and only for the purpose of our analysis, the alleged conduct upon which the claims in the cross-complaint are based arose out of protected activity within the meaning of section 425.16. We conclude the trial court properly denied the anti-SLAPP motion because Ryan and the law firm carried their burden of producing evidence establishing a reasonable probability that they will prevail on their claims.

BACKGROUND

In October 2012, The Grace Foundation filed a first amended complaint against Ryan; the law firm; Wells Fargo Bank, N.A., on its own behalf and as trustee of the MLMI Trust Series 2005-HE3; Bank of America, N.A.; BAC Home Loans Servicing,

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

LP;[2] Dwight Alan Bennett; Vicki Lozano, an individual, in her official capacity as a receiver; and Lassen County. The complaint contained claims for (1) quantum meruit alleged against all defendants except Lassen County; (2) fraud against the banks, Ryan, and the law firm; (3) breach of fiduciary duty and legal malpractice against Ryan and the law firm; (4) rescission against Lozano and Lassen County; (5) indemnification against the banks, Ryan, and Lozano; and (6) declaratory relief against Lozano, Lassen County, and Bennett. The claims of the first amended complaint were based on allegations of various forms of misconduct by defendants related to The Grace Foundation's decision to provide care for several abused and abandoned horses.

In November 2012, Ryan and the law firm filed a cross-complaint against DeCaprio and The Grace Foundation, containing claims for intentional interference with contract, defamation, and trade libel. The cross-complaint alleged that beginning in 2004, and continuing into May 2012, Ryan and the law firm were retained by BAC Home Loans Servicing, LP, to represent its interests in litigation throughout California. The cross-complaint further alleged that DeCaprio and The Grace Foundation knew about Ryan and the law firm's relationship with Bank of America since August 2011. It further alleged that beginning on June 1, 2012, DeCaprio spoke with Ryan's contacts at Bank of America and "made false statements about the actions of Ryan in his capacity as counsel for Bank of America, claiming that Ryan forged key documents, and claiming that Ryan was trying to kill DeCaprio and her daughter." The cross-complaint also alleged that during that time period, "DeCaprio provided a document to Bank of America containing numerous demonstrably false negative statements concerning the actions of Ryan and [t]he [law] firm."

The cross-complaint stated DeCaprio and The Grace Foundation made false assertions about Ryan and the law firm that were "published to thousands of people via

---

[2] We hereafter refer to Wells Fargo Bank, N.A., Bank of America, N.A., and BAC Home Loans Servicing, LP, as the banks.

e-mail notifications, through posting on Grace's web site, through Grace's Facebook page, on television and in newspaper articles.  The assertions claim that Ryan committed criminal acts and committed fraud, etc. in his professional capacity."  The cross-complaint stated that the allegedly false assertions were made with malice as "DeCaprio informed at least one member of the public that her goal was to destroy Ryan's career, falsely claimed that Ryan was threatening to kill her family, and thereafter sent Ryan an e-mail threatening his family and threatening him with criminal prosecution."

DeCaprio and The Grace Foundation filed a motion to strike the cross-complaint, arguing that the cross-complaint was "absolutely barred by the litigation privilege and the anti-SLAPP statute.  In addition, RYAN cannot establish a 'probability' that he will prevail.  As such, the cross-complaint must be stricken."

DeCaprio and The Grace Foundation did not produce any evidence in support of their anti-SLAPP motion.  In opposition to the anti-SLAPP motion, Ryan and the law firm filed Ryan's 26-page declaration[3] and over 150 pages of documentary evidence.

The trial court denied the anti-SLAPP motion.  DeCaprio and The Grace Foundation appealed.

DISCUSSION

I.

SECTION 425.16 AND STANDARD OF REVIEW

Section 425.16 provides for a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of

---

[3] DeCaprio and The Grace Foundation objected to much of Ryan's declaration primarily on lack of relevance grounds.  The trial court overruled those objections.  The trial court's evidentiary rulings are not at issue in this appeal.

petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. [Citation.] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers 'the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.'" (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) "'The defendant has the burden on the first issue, the threshold issue; the plaintiff has the burden on the second issue.'" (*Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 928.) To establish a probability of prevailing on a claim, "'the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88-89.)

We independently review the trial court's order denying the anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.) "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." [Citation.] However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that

5

submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Id.* at p. 326.)
The anti-SLAPP statute is to be broadly construed. (§ 425.16, subd. (a).)

## II.

### WE ASSUME FOR PURPOSES OF OUR ANALYSIS THAT DECAPRIO AND THE GRACE FOUNDATION MET THEIR BURDEN OF DEMONSTRATING THE STATEMENTS UNDERLYING THE CLAIMS CONTAINED IN THE CROSS-COMPLAINT AROSE FROM PROTECTED ACTIVITY UNDER SECTION 425.16, SUBDIVISION (e).

A defendant can meet his or her burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating the act underlying the plaintiff's cause of action falls within one of the four categories identified in section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78.) As pointed out by the trial court in its minute order, DeCaprio and The Grace Foundation failed to analyze in their moving papers which category, under section 425.16, subdivision (e), they claimed applied in this case.

The trial court stated that the moving papers suggested, through citation to *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, that DeCaprio and The Grace Foundation were arguing the applicability of the second category of protected conduct as identified in section 425.16, subdivision (e)(2). That section provides an "'act in furtherance of a person's right of petition or free speech . . .' includes . . . any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." The trial court observed the evidence of DeCaprio's statements produced by Ryan and the law firm in opposition to the anti-SLAPP motion showed the subject statements were "widely disseminated" and not made to a limited group of people involved in the litigation, rendering section 425.16, subdivision (e)(2) inapplicable.

The trial court also addressed the applicability of the third category of protected conduct identified in section 425.16, subdivision (e)(3), which involves

6

statements or writings made "in a place open to the public or a public forum" and concern a matter of public interest. (See *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117-1118.) The trial court observed, "there is a complete absence of evidence [by DeCaprio and The Grace Foundation] identifying the statements, their contents, the forum in which they were made, and the public interest in question." Although DeCaprio and The Grace Foundation concluded in their briefing before the trial court that the statements concerned an ongoing controversy in the public interest, they did so without analyzing the statements themselves.

Notwithstanding deficiencies in DeCaprio and The Grace Foundation's submissions in the trial court, we assume for purposes of our analysis that all of DeCaprio and The Grace Foundation's allegedly defamatory statements arose from protected activity under section 425.16, subdivision (e). We therefore do not need to review each of the alleged written and oral statements, but instead determine whether Ryan and the law firm met their burden of establishing a probability that they would prevail on the cross-complaint.

III.

RYAN AND THE LAW FIRM CARRIED THEIR BURDEN OF ESTABLISHING THE PROBABILITY THEY WILL PREVAIL ON THE CROSS-COMPLAINT.

Having assumed DeCaprio and The Grace Foundation met their burden of demonstrating the allegedly defamatory statements constituted protected activity under section 425.16, subdivision (e), the burden shifted to Ryan and the law firm to demonstrate that the cross-complaint is ""'"both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."'"" (*Navellier v. Sletten*, *supra*, 29 Cal.4th at pp. 88-89.) In their appellate briefs, DeCaprio and The Grace Foundation do not argue that Ryan and the law firm failed to produce evidence supporting all of the elements of the claims contained in the cross-complaint. Instead, they argue that, regardless of the

7

veracity of the subject statements, Ryan and the law firm have not demonstrated a probability of prevailing on the merits because their claims are based on statements protected by the litigation privilege under Civil Code section 47, subdivision (b)(1).

The litigation privilege, codified at Civil Code section 47, subdivision (b), "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action. [Citations.]" (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212.) The privilege is not limited to statements made inside a courtroom, but "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Ibid.*) "'[C]ommunications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation]." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057.)[4] "Statements to nonparticipants in the action are generally not privileged under [Civil Code] section 47, subdivision (b), and are thus actionable unless privileged on some other basis." (*Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1141.)

In *Rothman v. Jackson*, *supra*, 49 Cal.App.4th at page 1148, the appellate court held that the litigation privilege protects communications "which function intrinsically, and apart from any consideration of the speaker's intent, to advance a litigant's case. A party's pleadings obviously satisfy this test. The Supreme Court has also held that the test is satisfied by a lis pendens, which functions to preserve assets

---

[4] "'Both section 425.16 and Civil Code section 47 are construed broadly, to protect the right of litigants to "'the utmost freedom of access to the courts without [the] fear of being harassed subsequently by derivative tort actions.'" [Citations.] Thus, it has been established for well over a century that a communication is absolutely immune from any tort liability if it has "'some relation'" to judicial proceedings.'" (*Contemporary Services Corp. v. Staff Pro. Inc.*, *supra*, 152 Cal.App.4th at p. 1055.)

8

which are the subject of litigation by giving constructive notice of the litigation to any potential purchasers of the asset. [Citation.] Likewise, the test is satisfied by demand letters and like communications between litigants or their attorneys which are directed toward settlement of a pending or anticipated lawsuit [citations]; communications between a law firm and persons with potential claims, seeking support for the filing of a claim or action [citations]; and investigatory interviews with private individuals preparatory to a hearing [citation]."

Here, Ryan's detailed declaration authenticated copies of documents containing allegedly defamatory statements by DeCaprio and The Grace Foundation. Those defamatory statements, which underlay the claims of the cross-complaint, repeatedly accused Ryan of dishonesty, deceit, and "possible criminal fraud and malpractice." The statements appear in various forms—including what appear to be "e-mail blasts" from The Grace Foundation to "Friends" (presumably potential supporters of The Grace Foundation), Web site postings, and newspaper articles. None of the documents containing the statements constitutes court-related documents such as pleadings, motions, or demand letters.[5]

"[C]ase law has 'expanded the scope of [the litigation privilege] to include publication to nonparties with a substantial interest in the proceeding [citation] . . . .'" (*GetFugu, Inc. v. Patton Boggs LLP* (2013) 220 Cal.App.4th 141, 152.) "Notwithstanding the expansion of the scope of the litigation privilege to extend to publication to nonparties with a substantial interest in the proceeding, 'the expansion does not encompass publication to the general public through the press. Such an expansion would swallow up the general rule, which our Supreme Court . . . reaffirmed,

---

[5] Ryan's evidence includes an e-mail from The Grace Foundation addressed to the banks, which reiterates the same allegedly defamatory statements and urges "immediate resolution" of the dispute between them. Although that e-mail might substantively qualify as a demand letter that would be protected by the litigation privilege, The Grace Foundation published the e-mail on its Web site.

9

that [the litigation privilege] does not privilege "republications to nonparticipants in the action . . . ." (*Silberg* v. *Anderson*, *supra*, 50 Cal.3d at p. 219.)'" (*Id.* at p. 153.)

In *GetFugu, Inc. v. Patton Boggs LLP*, *supra*, 220 Cal.App.4th at page 153, one of the defendants issued a press release and a Tweet to publicize the alleged misdeeds of the plaintiffs. The defendants argued the press release was protected by the litigation privilege because it was directed through "'Investor Wire'" to the investment community. (*Id.* at pp. 153-154.) The appellate court rejected the defendants' argument, stating: "The press release and Tweet were posted on the Internet and thus were released worldwide. Dissemination of these publications to a segment of the population as large as the 'investment community' is essentially the same as disclosure to the general public. If anyone with an interest in the outcome of the litigation is a person to whom a privileged communication could be made, *Silberg* and *Rothman* would be eviscerated. We conclude the March 22, 2010 press release and the August 31, 2010 Tweet are not shielded by the litigation privilege." (*Id.* at p. 154.)

Here, Ryan produced evidence that The Grace Foundation sent several e-mails containing the allegedly defamatory material to over 5,000 supporters. The e-mails solicited financial support for the care of the horses. Some of the e-mails urged supporters to contact Ryan or the banks to "pressure" them to "do right by the Susanville horses and by Grace."

Ryan's evidence also included postings on The Grace Foundation's Web site of the allegedly defamatory statements, as well as copies of articles containing the same defamatory material attributable to DeCaprio and/or The Grace Foundation, which were posted on various news Web sites, including the News Blaze, the Mountain Democrat, the Folsom Telegraph, the Village Life, and the El Dorado Hills Telegraph. Ryan's declaration stated that the defamatory statements also appeared in YouTube videos and televised news stories.

Although many of the documents, described *ante*, contain references to the instant lawsuit and related bankruptcy court proceedings, and, in some instances, even provide the reader a litigation status update, the widespread publication of the allegedly defamatory material well beyond the participants of the litigation and to the general public establishes the inapplicability of the litigation privilege to those publications.

Ryan and the law firm have also established the inapplicability of the common interest privilege of Civil Code section 47, subdivision (c), which provides that a publication or broadcast is privileged if it is made "[i]n a communication, *without malice*, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Italics added.)

In his declaration, Ryan declared that DeCaprio "stated specifically that she was going to ruin my career and destroy my relationships with Wells Fargo and Bank of America." Ryan stated that on another date, DeCaprio told him that she "was going to 'destroy' [him] and 'tell the Banks everything that [he] did' and that [his] career was 'over.'" Such evidence on the issue of malice was sufficient to show the probability that Ryan and the law firm would defeat DeCaprio and The Grace Foundation's common interest privilege as an affirmative defense to the claims of the cross-complaint. As a result, Ryan and the law firm have carried their burden of establishing a probability of prevailing on their cross-complaint and the trial court did not err by denying the anti-SLAPP motion.

IV.

MOTION TO CONFIRM AND ENFORCE STAY OF DISCOVERY ON CROSS-COMPLAINT

During the pendency of this appeal, DeCaprio and The Grace Foundation moved this court to confirm and enforce the stay of the discovery on the cross-complaint. In light of our opinion affirming the trial court's order denying the anti-SLAPP motion,

11

we deny the motion to confirm and enforce the stay of discovery on the cross-complaint as moot.

## DISPOSITION

The order is affirmed. Respondents shall recover costs on appeal.


FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.