Filed 7/18/13  Sukumar v. Ballard CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| PONANI SUKUMAR, | D061178 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00050243-CU-DF-CTL) |
| JAMES R. BALLARD et al., | |
| Defendants and Respondents. | |


APPEAL from an order of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.


Brownstein Hyatt Farber Schreck, Barry B. Langberg, Chad P. Seber and Deborah Drooz for Plaintiff and Appellant.

Butz Dunn & DeSantis, Douglas M. Butz and David D. Cardone for Defendants and Respondents.

INTRODUCTION

Ponani Sukumar (Ponani) appeals from an order granting the special motion of James R. Ballard and Schwartz Semerdjian Ballard & Cauley LLP (collectively Ballard) to strike his defamation complaint under Code of Civil Procedure section 425.16,[1] commonly referred to as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Equilon Enterprises v. Consumer Cause, Inc*. (2002) 29 Cal.4th 53, 57, fn 1.) Ponani contends the anti-SLAPP statute does not apply to his complaints because the alleged defamatory statements were commercial speech. He also contends the trial court erred by determining his claims were time-barred, by weighing evidence to find the alleged defamatory statements were true, and by sustaining Ballard's objections to the declaration of his linguistics expert.

We conclude the anti-SLAPP statute applies and Ponani's claims are time-barred. We, therefore, affirm the order.

BACKGROUND

I

*Prior Malicious Prosecution Action*

This case stems from Ballard's prior successful handling of a malicious prosecution action. For context, we repeat the background summary from our decision affirming the judgment in the action.

---

[1] Further statutory references are also to the Code of Civil Procedure unless otherwise stated.

"Ponani and Sara [Sukumar] were born in India. In 1970, they were married. In April 1978, Sara moved to the United States to begin her job as a cancer researcher in Maryland. In January 1979, Ponani and their two children joined her in the United States. Ponani began a two-year master's degree program at the Wharton School of Business and lived in Philadelphia, while Sara and their children lived in Maryland. While in graduate school, Ponani met [Shih-Hua Alan] Lee, a classmate, and they became close personal friends. After Ponani obtained his degree, he remained in Philadelphia for two more years working as a financial advisor and insurance agent. In 1982, Lee returned home to Singapore. In 1983, Ponani and Sara moved into a home they purchased in Maryland. During the following four years, Sara worked as a medical researcher and Ponani worked as a broker. Ponani also served as Lee's financial advisor.

"In 1987, Sara accepted a research position with the Salk Institute in San Diego. In November 1987, Ponani and Sara moved with their children to San Diego. During the following three years, Ponani worked at various firms as a broker, but earned less money than before. In July 1991, Ponani stopped working as a broker and told Sara he would start working out of their home. However, apparently he was never able to do so.

"Between 1990 and 1994, Ponani made various telephone calls to Lee requesting financial assistance. [Fn. omitted.] Ponani wrote purportedly contemporaneous letters summarizing each telephone call and the terms of the purported loan Lee would make to him. [Fn. omitted.] Following each request, Lee transferred money to [a] joint account with Sara. However, Sara was unaware of Ponani's requests or Lee's money transfers.

3

"In October 1994, Sara moved to Maryland to begin her new job with Johns Hopkins University as an associate professor and director of breast cancer research. Ponani remained in San Diego.

"In February 1995, Sara filed a petition for the dissolution of her marriage to Ponani. Apparently following through on his prior threats to financially and emotionally 'break' Sara if she filed for divorce, Ponani declared he had no source of income and succeeded in obtaining a court order that she pay him spousal support. Furthermore, Ponani declared the purported 'loans' (i.e., the money transfers) Lee made to him were community debts. On reviewing that declaration, Sara learned about Lee's money transfers for the first time and took the position that she had no obligation to repay those purported debts. Ponani also submitted a letter from Lee in which Lee stated he would not be able to continue making loans to Ponani in the future.

"On February 27, 1997, while the Sukumars' dissolution proceeding was ongoing, Lee filed an action against Ponani and Sara for breach of contract based on the 'loans' he allegedly made to Ponani. Lee sought total damages of $1,410,805. Sara filed a cross-complaint against Lee and Ponani, alleging she had no knowledge of the purported loans and Ponani should alone be declared responsible for paying any judgment. She sought equitable indemnity from Ponani. On his attorneys' advice, Ponani filed a cross-complaint against Sara for equitable indemnity and declaratory relief.

"Because Ponani agreed with Lee's claims regarding the loans, he entered into a stipulated judgment with Lee in the amount of $888,000. It provided that Ponani would pay Lee in installments and, if Lee demanded, he would transfer to Lee his interest in a

4

Maryland property and his San Diego home. Ponani's judgment obligation would be reduced by any amounts Lee recovered from Sara in the ongoing breach of contract action.

"Before trial, Ponani voluntarily dismissed his cross-complaint against Sara. On September 4, 1998, following a bench trial, the trial court issued a statement of decision rejecting Lee's claim that Sara owed him money on his purported loans. Although the court believed Lee transferred substantial amounts of money to Ponani, it concluded Lee intended those transfers to be gifts and not loans. The court found Sara's testimony to be highly credible, and found Lee's testimony inherently incredible and his claim that the transfers were intended to be loans unsupported by evidence and unbelievable.[2] The court noted Lee 'had difficulty maintaining a straight face as he answered questions of the Court about his motivation in making these transfers.' It noted that in applying for a line of credit, Ponani did not list any loans from Lee. Although Lee presented copies of Ponani's letters regarding the purported loan requests, they contained no fax legend showing they were faxed by Ponani and/or received by Lee. It further found Lee did not maintain any documents or other records to memorialize the purported loans. Furthermore, after Lee filed his action against Ponani and Sara, Lee transferred substantial amounts of money to Ponani's 90-year-old father without any realistic hope of recovering that money. The court concluded Lee's breach of contract action was very

---

2 "Ponani invoked his constitutional right against self-incrimination and did not testify at trial.

5

likely orchestrated by Ponani to gain a tactical advantage in his marital dissolution case with Sara. The court believed the evidence of loans presented by Lee (e.g., copies of Ponani's letters) 'may very likely have been fabricated for trial.' The court stated:

> " 'The terms of the alleged loans are vague and change over time. There was no collateral, and Mr. Lee has neither seriously demanded any repayment nor has he ever received even one cent in repayment since 1981. Inherent in the evidence is a donative intent. These were voluntary transfers without consideration. Civil Code [section] 1146. Accordingly, the Court finds that these cash transfers from Mr. Lee to [Ponani] are gifts and not loans.' "

Accordingly, the court entered judgment for Sara.[3]

"On February 8, 2002, Sara filed [an] action for malicious prosecution against Lee and Ponani. [Fn. omitted.] On November 14, 2003, she filed her operative first amended complaint, alleging Lee maliciously filed and prosecuted his breach of contract action, and Ponani maliciously filed and prosecuted his cross-complaint for indemnity, without probable cause. She sought general, special, and punitive damages. On December 12, the trial court denied Lee's and Ponani's SLAPP motions to strike the complaint pursuant to Code of Civil Procedure section 425.16.[4]

"Following the evidentiary portion of the jury trial, the trial court granted Ponani's motion for nonsuit, finding that, as a matter of law, he had probable cause to file his

---

3    "On appeal, we reversed the trial court's award of sanctions against Lee because Sara's motion for sanctions was untimely filed, but affirmed the judgment in all other respects. (*Lee v. Sukumar* (Nov. 20, 2000, D032371) [nonpub. opn.].)

4    "On appeal, we affirmed the trial court's order denying the motions to strike. (*Sukumar v. Sukumar* (Nov. 16, 2004, D043538) [nonpub. opn.].)

6

cross-complaint for indemnity against Sara in the underlying lawsuit for breach of contract. The court denied Lee's motion for a directed verdict, finding there were disputed issues of fact for the jury to decide before it could determine whether Lee had probable cause to file his breach of contract action against Sara. The jury answered, 'Yes' to the question: 'Has [Sara] proved that at the time Mr. Lee filed the original complaint on January 10, 1997, that he knew that his claim that he loaned money to the Sukumars on or about April 8, 1991 was false[?]' [Fn. omitted.] The jury also answered, 'Yes' to that question regarding other subsequent loans purportedly made by Lee. The jury also answered, 'Yes' to the question: 'Has [Sara] proved that during the pendency of the lawsuit, Mr. Lee knew that his claim that he loaned money to the Sukumars on or about April 8, 1991 was false[?]' [Fn. omitted.] The jury also answered, 'Yes' to that question regarding other subsequent loans purportedly made by Lee.

"The jury also returned a special verdict finding Lee brought his breach of contract action against Sara primarily for a purpose other than succeeding on the merits of the action, Sara was harmed thereby, and Lee's conduct was a substantial factor in causing her harm. The jury found Sara's economic damages (e.g., attorney fees and costs in the underlying action) were $160,000 and her noneconomic damages (e.g., mental suffering) were $800,000. The jury also found Lee acted with malice, oppression or fraud to justify an award of punitive damages. The trial court then concluded that, based on the facts found by the jury, Lee did not have probable cause to file or prosecute his breach of contract action against Sara. The court noted the jury found Lee knew his claim that he loaned money was false and, considering that finding, its ruling on probable cause was

7

compelled. After presentation of evidence in the punitive damages phase of the trial, the jury awarded Sara $5,000,000 in punitive damages against Lee. On November 13, 2006, the court entered judgment against Lee based on the jury's verdict. On December 7, 2006, the court entered a separate judgment for Ponani based on its order granting his motion for nonsuit.

"On November 30, Lee filed motions for judgment notwithstanding the verdict (JNOV) and for a new trial. Lee argued he had probable cause to file his action and the amount of punitive damages awarded by the jury was excessive. The trial court denied the motion for a new trial and granted the JNOV motion in part, reducing the amount of the punitive damages to $1,454,000, and denied that motion in all other respects. The court stated:

> " 'Mr. Lee argues that the Court abdicated its duty [to decide the issue of probable cause] by relying on the jury's findings. The jury specifically found that Lee knew his claim for each loan was false when he filed the Complaint and knew that his claim for each loan was false during the pendency of the lawsuit. Since Lee was the so-called lender, his knowledge would be paramount. If Lee knew the claims were false, then there could not be any probable cause for filing a suit to collect on loans.

> " 'Nevertheless, [Lee] urges the Court to make an independent inquiry. The Court has done so. The Court finds the testimony of Mr. Lee not credible. . . . The Court has not gone into all the instances of Mr. Lee's unbelievable testimony, such as his testimony regarding why he had a hand puppet at the deposition. . . . [T]he testimony of Mr. Lee simply is not credible. In the view of the Court, there was never an intent to make a loan, and at the time the lawsuit was filed and through the pendency of the lawsuit, there was no enforceable loan and Mr. Lee was well aware there was no enforceable loan. Therefore, there was no probable cause to file the suit.' " [Fn. omitted.]

8

On February 23, 2007, the trial court entered an amended judgment on the jury verdict, which was basically the same as the original judgment except for the court's reduction in the punitive damages awarded from $5,000,000 to $1,454,000." (*Sukumar v. Sukumar* (D050303, Apr. 8, 2009) [nonpub. opn.].)

II

*Instant Libel and Slander Action*

In October 2008 while the appeal of the malicious prosecution action was pending, Ballard received an "Outstanding Trial Lawyer" of the year award from the Consumer Attorneys of San Diego (Consumer Attorneys) for his efforts in the action. Ballard supplied the organization with descriptions of the malicious prosecution action, which the organization synopsized and published in its program for the awards ceremony. The published summary read:

"[Ballard] was lead counsel on a malicious prosecution case entitled *Sukumar v. Shih-Hua Alan Lee*. [Ballard's] client, Dr. Sara Sukumar, is a world-renowned research scientist in the field of breast cancer. Alan Lee, the co-defendant and friend of Sara's husband, Ponani, is the son of one of the richest families in Singapore.

"Ponani and Lee's relationship grew extremely close and they engaged in secretive financial affairs unbeknownst to Sara. Ponani convinced his family that he was a successful stock broker managing Lee's wealth. In truth, Ponani and his family were living off of large sums of money gifted by Lee, totaling approximately $1.4 million.

"Ponani refused to pay taxes and the IRS attached Sara's income. When Sara asked to separate her finances from Ponani, he became verbally and physically abusive.

9

He said that if she were to leave him, he would make her pay for the rest of her life. Fearing for her safety as well as that of her children, Sara left Ponani in October 1994. In an effort to exact revenge, Ponani and Lee devised a plan to ruin Sara financially by claiming that the money from Lee was a loan, and as such, a community debt requiring Sara to repay half. Lee then filed suit against Sara and Ponani for unpaid loans. Sara was forced to pay spousal support and potentially close to a million dollars of debt to Lee. Sara was eventually forced to file for bankruptcy protection.

"Meanwhile, Ponani and Lee remained close friends. Lee continued to transfer money to Ponani to fund his legal defense expenses. During Lee's lawsuit against Sara, he appeared at his deposition with a panda bear hand-puppet which he consulted with and testified through. Eventually, Sara defeated Lee's claims for unpaid loans. The judge also found the lawsuit was orchestrated by Ponani to gain a tactical advantage in the divorce action. Sara then filed this malicious prosecution action against Lee and Ponani.

"During the litigation [Ballard] withstood motions to strike, demurrers, SLAPP motions, appeals of the SLAPP motions, motion for summary judgment and every other imaginable motion and procedural hurdle before finally getting a jury. The jury returned a verdict of $960,000 in compensatory and $5,000,000 in punitive damages. Following the verdict, Defendant Lee filed a JNOV and motion for new trial. The verdict was upheld, but punitives were cut to $1,454,000. The total award is in excess of $2.3 million. The Defendant has filed an appeal which is pending."

In January 2011 Ponani filed the instant action against Ballard for libel and slander. The complaint alleged Ballard's oral and written statements to Consumer

10

Attorneys and the written statements contained in the awards ceremony program falsely implied a court found Ponani liable for malicious prosecution and guilty of conduct resulting in a punitive damages award against him.[5]

Ballard filed a special motion to strike Ponani's complaint under the anti-SLAPP statute. Ballard argued the challenged statements were protected speech because they constituted a " 'written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body' as well as a 'written or oral statement or writing made in a . . . public forum in connection with an issue of public interest.' [§ 425.16, subd. (e)(2)-(3).]" Ballard further argued Ponani had no likelihood of prevailing on the merits of his claims because the claims were time-barred, the statements were absolutely privileged, and the statements were true.

---

[5] Ponani also filed two other actions against Ballard. He filed a malicious prosecution action in Los Angeles County Superior Court based on the dismissal of his wife's unsuccessful malicious prosecution action against him. The trial court struck the action under the anti-SLAPP statute and the appellate court affirmed the trial court's decision. (*Sukumar v. Schwartz Semerdjian Haile Ballard & Cauley LLP et al.*, (B227259, May 1, 2012) [nonpub. opn.].) In addition, he filed another libel and slander action in San Diego Superior Court based on statements Ballard made on the firm's website about Sara's successful malicious prosecution action against Lee. The trial court entered summary judgment for Ballard in that action and Sukumar is currently appealing the trial court's decision. (*Sukumar v. Ballard et al.* (D062135).)

We grant Ballard's request for judicial notice of the appellate court's decision in case number B227259, the trial court's order and judgment in case number D062135, and the notice of appeal in case number D062135 solely for purposes of accurately summarizing the procedural history of this case. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) We deny Ballard's request for judicial notice in all other respects as the documents included in the request were not before trial court in this case and are not necessary to resolution of the issues raised on appeal. (*Doe v. City of Los Angeles* (2007) 42 Cal.4th 531, 544, fn. 4; *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

Ponani opposed the motion, arguing the anti-SLAPP statute did not apply because the challenged statements were commercial speech, not protected speech. He additionally argued he was likely to prevail on the merits because the statements were false, defamatory and caused him damages. He also argued the statements were not privileged and the statute of limitations was tolled by the delayed discovery rule.

The court granted the anti-SLAPP motion, finding the challenged statements were protected speech rather than commercial speech. The court also found Ponani had not shown a probability of prevailing on the merits of his claims because the delayed discovery rule did not apply, his claims were time-barred, and the challenged statements were true.

On appeal, Ponani reasserts his contention the anti-SLAPP statute does not apply to his claims because the challenged statements were commercial speech. He additionally contends the court erred by determining the delayed discovery rule did not apply to his claims, by weighing evidence to find the statements were true, and by sustaining Ballard's objections to the declaration of Ponani's linguistics expert. We need not address the latter two contentions as we conclude the challenged statements were protected speech and Ponani's claims are time-barred.

DISCUSSION

"Section 425.16, subdivision (b)(1), provides: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court

12

determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.'  The analysis of an anti-SLAPP motion thus involves two steps.  'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity.  (§ 425.16, subd. (b)(1).)  If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.'  [Citation.]  'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute— i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' "  (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820.)  "We review an order granting or denying a motion to strike under section 425.16 de novo."  (*Id*. at p. 820.)

I

*Arising From Protected Activity Prong*

A

"A defendant can meet his or her burden of making a threshold showing that a cause of action is one arising from protected activity by demonstrating the acts underlying the plaintiff's cause of action fall within one of the categories of section 425.16, subdivision (e).  [Citation.]  [¶]  Section 425.16, subdivision (e) provides in relevant part:  'As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes . . . any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any

13

other official proceeding authorized by law.' " (*Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1054-1055.) "A statement is 'in connection with' litigation under [section 425.16, subd. (e)(2)] if it relates to *substantive issues* in the litigation and is *directed to persons having some interest* in the litigation (need not be parties or potential parties)." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 7:720, p. 7(II)-28, citing *Contemporary Services Corp. v. Staff Pro, Inc.*, *supra*, at p. 1055, and *Fremont Reorganizing Corp. v. Faigin* (2011) 198 Cal.App.4th 1153, 1168.)

In this case, the parties do not dispute that the malicious prosecution action was under review by this court at the time the challenged statements were made. In addition, the record shows the challenged statements related to substantive issues in the litigation because the statements conveyed the background, claims, and status of the litigation. The record also shows the statements were made to persons having some interest in the litigation because Consumer Attorneys "is an organization of trial lawyers in San Diego who work to preserve and protect legal rights of consumers" and the purpose of the awards ceremony was "to recognize the accomplishments of its members and to highlight the particular cases in which the recipients successfully advocated on behalf of their clients." We, therefore, conclude Ballard met his threshold burden of showing Ponani's claims arose from protected activity.

14

B

*Commercial Speech Exemption*

Ponani nonetheless asserts the anti-SLAPP statute does not apply to his claims because the challenged statements were commercial speech. "Section 425.17, subdivision (c) exempts a cause of action arising from commercial speech from the anti-SLAPP law when '(1) the cause of action is against a person primarily engaged in the business of selling or leasing goods or services; (2) the cause of action arises from a statement or conduct by that person consisting of representations of fact about that person's or a business competitor's business operations, goods, or services; (3) the statement or conduct was made either for the purpose of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services or in the course of delivering the person's goods or services; and (4) the intended audience for the statement or conduct meets the definition set forth in section 425.17[, subdivision] (c)(2) [(i.e., an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer)].' " (*Hawran v. Hixson* (2012) 209 Cal.App.4th 256, 270.) Courts must construe the commercial speech exemption narrowly and the party seeking the benefit of it has the burden of proving its applicability. (*Simpson Strong-Tie Co., Inc. v. Gore* (2010) 49 Cal.4th 12, 22, 26; *Hawran v. Hixson*, *supra*, at p. 270.)

In this case, the parties do not dispute that Ballard is primarily engaged in the business of selling services, satisfying the first requirement. We need not decide whether Ponani satisfied the second or third requirements because we conclude he has not

15

satisfied the fourth requirement. The record shows that, while the awards ceremony was open to anyone who bought a ticket for it, the majority of attendees were members of Consumer Attorneys or affiliated with the honorees. There is no evidence the audience included actual or potential clients.

In addition, there is no evidence the awards ceremony program or its contents were distributed to actual or potential clients. Consumer Attorneys advertised the awards ceremony to its membership, but did not distribute the awards ceremony program or its contents to anyone before or after the event. Ballard also did not keep a copy of the program or send a copy of it to anyone.

Further, there was no evidence the attendees of the awards ceremony were *likely* to repeat the challenged statements to, or otherwise influence, actual or potential clients. "Likely" means "having a high probability of occurring or being true: very probable." (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 721.) While Ballard may have viewed the award as "good recognition" and the awards ceremony may have provided him with an opportunity to network, there is no evidence Ballard received or had a high probability of receiving any referrals from the other honorees or attendees. Ballard specifically testified at his deposition the award had not had any effect on his business and no client "has said to me that I want you because you received this [award], or that I saw you receive this [award]." In addition, when asked whether he or his firm had ever received a referral from a Consumer Attorneys member, he testified, "we certainly get referrals from attorneys, but I have no idea if they are in [Consumer Attorneys]." He also testified he did not join Consumer Attorneys because it was a possible referral source and

16

noted Consumer Attorneys is "a plaintiff's organization, and most of my trial victories have been for defendants." Consequently, while it was possible Ballard might have received a referral from someone who attended the awards ceremony, Ponani has not shown Ballard was likely to have done so. Accordingly, Ponani has not shown the commercial speech exemption applies to his claims.

## II

### *Probability of Prevailing on Claim Prong*

### A

Having concluded Ballard met the threshold burden of showing Ponani's claims arise from protected activity, we next consider whether Ponani met his burden of establishing a probability of prevailing on the merits. " 'To establish a probability of prevailing, the plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." [Citations.] For purposes of this inquiry, "the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." [Citation.] In making this assessment it is "the court's responsibility . . . to accept as true the evidence favorable to the plaintiff . . . ." [Citation.] The plaintiff need

17

only establish that his or her claim has "minimal merit" [citation] to avoid being stricken as a SLAPP.' " (*Hawran v. Hixson*, *supra*, 209 Cal.App.4th at pp. 273-274.)

B

*Statute of Limitations and Delayed Discovery Rule*

Below, Ballard argued and the court agreed Ponani's claims were time-barred. In reaching its decision, the court determined the delayed discovery rule did not apply in this case. Ponani contends the court was mistaken in this determination. We disagree.

Defamation claims are subject to a one-year statute of limitations. (Civ. Proc. Code, § 340, subd. (c).) "Ordinarily, a tort cause of action accrues and the limitations period commences when the injury occurs; for defamation this occurs, generally speaking, when the defendant communicates the defamatory statement to others." (*Shively v. Bozanich* (2003) 31 Cal. 4th 1230, 1237 (*Shively*).) Here, the record shows the challenged statements were communicated at or before the awards ceremony, which was held on October 3, 2008. Ponani did not file his complaint until January 10, 2011, more than two years later.

"In some tort actions, the accrual of the cause of action is delayed until the plaintiff knew (or with reasonable diligence should have known) of the factual basis for the claim. This so-called discovery rule has been applied to defamation actions in limited circumstances when the defamatory statement is made in secret or is inherently undiscoverable." (*Shively*, *supra*, 31 Cal.4th at p. 1237; accord, *Hebrew Academy of San Francisco v. Goldman* (2007) 42 Cal.4th 883, 894 [delayed discovery rule does not apply to defamation claims unless the defamatory statement was hidden from view because it

18

was communicated in an inherently secretive manner]; *Christoff v. Nestle USA, Inc.* (2009) 47 Cal.4th 468, 483 [same]; cf. *Manguso v. Oceanside Unified School District* (1979) 88 Cal.App.3d 725, 727, 731 [delayed discovery rule may apply to libel claim based on contents of letter placed in a confidential file in defendant's personnel office and not discovered by plaintiff until almost 16 years later].)

However, the delayed discovery rule does not apply to defamatory statements governed by the single publication rule.  (*Shively*, *supra*, 31 Cal.4th at pp. 1237, 1245-1246, 1250-1251.)  Under the single publication rule, "No person shall have more than one cause of action for damages for libel or slander . . . founded upon any single publication or exhibition or utterance, such as one issue of a newspaper or book or magazine or any one presentation to an audience."  (Civ. Code, § 3425.3.)  The rule applies even when the publication, exhibition, utterance, or presentation has a limited circulation or audience.  (*Hebrew Academy of San Francisco v. Goldman*, *supra*, 42 Cal.4th at p. 893; *Christoff v. Nestle USA, Inc.*, *supra*, 47 Cal.4th at pp. 482- 483.)  Consequently, to the extent Ponani's claims are based on statements contained in the awards ceremony program or disseminated at the awards ceremony, the delayed discovery rule does not apply and his claims are time-barred.

To the extent Ponani's claims are based on the information Ballard supplied to Consumer Attorneys before the awards ceremony, the claims are likewise time-barred. Even assuming Ballard provided the information in confidence, the rationale for applying the delayed discovery rule to the information ceased to exist once the information was published in the awards ceremony brochure.  (*Shively*, *supra*, at 31 Cal.4th p. 1253.)

19

Given our conclusion, we need not address Ponani's contention the court improperly weighed evidence when it determined the challenged statements were true. We also need not address Ponani's contention the court improperly sustained Ballard's objections to the declaration of Ponani's linguistics expert.

DISPOSITION

The order is affirmed.  Respondents are awarded appeal costs.

McCONNELL, P. J.

WE CONCUR:

McINTYRE, J.

O'ROURKE, J.