Filed 9/22/21  Fierro v. County of L.A. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| GEORGE FIERRO, | B305699 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 19PSCV00760) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael P. Vicencia, Judge.  Affirmed.

Mahoney & Soll, Paul M. Mahoney and Richard A. Soll for Plaintiff and Appellant.

Collins Collins Muir + Stewart, Tomas A. Guterres, David C. Moore, and Daniel D. Hoffman for Defendant and Respondent.

_____

George Fierro sued the County of Los Angeles and three of its divisions, the District Attorney's Office, the Public Defender's Office and the Alternate Public Defender's Office, for defamation, negligent and intentional infliction of emotional distress and interference with prospective economic advantage, based on inclusion of information regarding Fierro in the County's Officer and Recurrent Witness Information Tracking System (ORWITS) database.  The trial court granted the County's special motion to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16)—the anti-SLAPP statute.[1]  On appeal Fierro argues his complaint did not arise from protected speech or petitioning activity because the statements about him in ORWITS "are demonstrably and factually false" and his lawsuit is not barred by the litigation privilege (Civ. Code, § 47, subd. (b)) because the County's creation and maintenance of ORWITS constitute noncommunicative conduct.  He also argues the trial court abused its discretion when it denied his ex parte motion to conduct discovery, filed several weeks after briefing on the County's motion had been completed.  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The County's Discovery Compliance Database*

The Los Angeles County District Attorney's Office created and maintains a discovery compliance system comprised of a *Brady* database, a repository of information that must be disclosed in criminal cases pursuant to *Brady v. Maryland* (1963) 373 U.S. 83 and Penal Code section 1054.1, subdivision (e), and

---

[1]     SLAPP is an acronym for "strategic lawsuit against public participation."  (*City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 413, fn. 2.)

ORWITS, which contains impeaching and potentially impeaching information about law enforcement officers and other frequent witnesses, including experts, in criminal cases.[2] The information in the two databases is shared only if a case has been filed. When a witness list is submitted for the generation of subpoenas, the system automatically checks the witness information in the *Brady*/ORWITS databases. If a match is found, the system advises the assigned prosecutor, who may view the data and disclose information about the witness as necessary for the preparation and trial of the case. As explained in a March 15, 2018 special directive from District Attorney Jackie Lacey, the discovery compliance system is intended to "improve the capacity for deputies to comply with constitutional and statutory discovery obligations, ensure defendants receive a fair trial, protect recurrent witnesses from unfair surprise, and preserve the integrity of convictions."

The County advises peace officers when it enters information about them into the ORWITS database. An officer may submit documents to explain or refute the information, and any documents provided are included with the ORWITS entry and are accessible to the prosecutors using the system.[3]

---

[2] ORWITS was first implemented in February 2017. The *Brady* database was added to work in conjunction with ORWITZ in March 2018.

[3] Entries into ORWITS are not reconsidered except in cases of mistaken identity. In contrast, a recurrent witness notified of his or her entry into the *Brady* database may seek reconsideration of that decision.

## 2. *Fierro's Complaint*

Fierro filed an unverified complaint on August 23, 2019 for defamation, negligent and intentional infliction of emotional distress and interference with prospective economic advantage, naming as defendants the County, as well as the Los Angeles County District Attorney's Office, the Los Angeles County Public Defender's Office and the Los Angeles County Alternate Public Defender's Office, administrative divisions of the County. Fierro alleged he is a law enforcement officer in Los Angeles County and, on information and belief, ORWITS reveals to third parties that law enforcement officers are included in the database and discloses information about officers "that is unverified, false and defamatory." Fierro further alleged law enforcement officers are added to the database without their knowledge or consent and "[j]ust being on the list creates an inference that the party on the list is dishonest or untruthful."

In his first cause of action for defamation, Fierro alleged he had recently discovered he was included in the ORWITS database, which he refers to as a "list." He additionally alleged the information attributed to him was defamatory and defamatory statements about him had been made by defendants to third parties "including other law enforcement persons and lawyers." In his second and third causes of action, in addition to incorporating the prior allegations in the complaint, Fierro alleged the defendants and their agents had negligently (second cause of action for negligent infliction of emotional distress) or intentionally (third cause of action for intentional infliction of emotional distress) spread false and defamatory rumors about him. In his fourth cause of action for interference with prospective economic advantage, in addition to incorporating the

4

prior allegations, Fierro alleged, again on information and belief, that the defendants, "through surreptitious contacts and correspondence with employers have made false and defamatory statements and among other things said [Fierro] is dishonest." As a result of this conduct, Fierro alleged he is in jeopardy of having his contractual relations and future relationships with potential employers terminated.

      3. *The County's Special Motion To Strike*

The County demurred to Fierro's complaint, moved to strike portions of the complaint, including the prayer for punitive damages and attorney fees, and filed a special motion to strike the entire complaint pursuant to section 425.16. The hearing on the special motion to strike was originally scheduled for January 6, 2020 but, because of recusals, was continued several times, eventually to March 12, 2020.

In its special motion to strike the County described ORWITS (through a declaration of the deputy district attorney in charge of the discovery compliance unit of the district attorney's office and attached material as to which the County requested judicial notice) and explained each of Fierro's four causes of action was based on allegedly defamatory speech disseminated as a result of its use of ORWITS. The County argued its disclosures of information from the ORWITS database were protected activity within the meaning of section 425.16, subdivision (e)(2), as communications made in connection with anticipated litigation, and its input of information regarding Fierro and other officers constituted protected activity within the meaning of section 425.16, subdivision (e)(4), as conduct in furtherance of the exercise of free speech in connection with a public issue or an issue of public interest (criminal prosecutions).

5

As to the possible merits of the lawsuit, the County argued its creation and use of ORWITS were absolutely protected by the litigation privilege in Civil Code section 47, subdivision (b).  Its activity, the County asserted, was also conditionally privileged under Civil Code section 47, subdivision (c), the common interest privilege; and Fierro could not prove malice.  In addition, the County identified several Government Code immunity provisions it argued applied in the case and defeated Fierro's causes of action as a matter of law.  In any event, the County contended, the information in ORWITS regarding Fierro was true and, therefore, not actionable.

4. *Fierro's Opposition and the County's Reply*

In his declaration in opposition to the special motion to strike, Fierro described himself as a senior detective and 27-year veteran of the El Monte Police Department.  According to Fierro, he was included in ORWITS based on a false accusation that he had committed perjury and falsified evidence in connection with a 2012 criminal trial of an El Monte police sergeant, which ended in a mistrial and dismissal of charges when the jury could not reach a verdict.[4]  In retaliation, the district attorney's office

---

[4]    In June 2014 Fierro received a notice of administrative interview, which he attached as an exhibit to his opposition declaration, that explained the trial deputy in the case of *People v. Guadarrama* reported potential wrongdoing by Fierro.  "It is alleged you may have lied on your report as well as attempted to minimize or distort evidence in the case.  It is further alleged you provided false trial testimony . . . .  [¶]  During your testimony, you testified Sergeant Guadarrama reported to you she had been struck by Javier Marquez on the day of the incident.  Yet, you failed to take appropriate action on that day and failed to document those statements in your report."

6

placed him in the ORWITS database and refused to remove his name despite the fact he was "completely exonerated" from any wrongful conduct following an internal affairs administrative review. Fierro attached a copy of the letter he received notifying him of his inclusion in the ORWITS database.[5]

In his declaration Fierro provided examples of cases in which he had participated as an investigating officer but was not called as a witness because of information concerning him in the ORWITS database. He also attributed to his inclusion in ORWITS his unsuccessful applications to become an investigator with the Los Angeles County Public Defender's Office and a Los Angeles County Sheriff's Department "deputy sheriff lateral."

In his legal memorandum in opposition to the special motion to strike, Fierro conceded statements made to prosecutors preparing for trial generally are protected activity within the

---

[5] The three paragraph letter, dated October 9, 2018, stated: "The Discovery Compliance Unit (DCU) of the Los Angeles County District Attorney's Office has information that you allegedly failed [to] include potentially exculpatory evidence in your report in the case of People v. Guadarrama. [¶] This information will not be kept in the Office's *Brady* database, which maintains information that must be provided to the defense if you are a witness in the future, but will be stored in ORWITS (Officer and Recurrent Witness Information Tracking System), an informational database. The entry of information into ORWITS is not an endorsement or a final determination of its validity and the decision to release information contained therein can only be made by the handling Deputy District Attorney, in consultation with their supervisor and/or the court. [¶] If you have any questions or believe you have been misidentified, please contact the DCU at . . . . Additional information can be found at . . . by entering the password . . . ."

meaning of section 425.16, but argued the statements in ORWITS are not protected "because the statements themselves are demonstrably and factually false and cannot be challenged in any manner, thereby permanently stigmatizing Fierro." Fierro contended being on a government blacklist containing false information without the ability to challenge the false information constituted stigmatization and reputational injury for which relief must be available. In support Fierro cited *Flatley v. Mauro* (2006) 39 Cal.4th 299 (*Flatley*), which held, when it is conceded or established as a matter of law by uncontested evidence that a person acted illegally when exercising his or her First Amendment rights, that activity is not protected within the meaning of the anti-SLAPP statute.

Fierro described the elements of his causes of action for defamation, intentional and negligent infliction of emotional distress and interference with prospective economic advantage and argued the evidence submitted with his opposition papers made a prima facie showing of facts that, if proved, would support a judgment in his favor on each of his causes of action. Fierro asserted the litigation privilege was unavailable as a defense because his lawsuit, which he described as "analogous to invasion of privacy," was based on reputational injury caused by his inclusion in the ORWITS database, which he described as noncommunicative conduct outside the scope of the privilege.[6] He

---

[6] In two somewhat enigmatic footnotes in his opposition papers, Fierro stated, "Based on the evidence submitted, Fierro moves to amend his Complaint to conform to proof." No motion to amend the complaint is contained in the record on appeal; there is no indication Fierro filed or the trial court ruled on any such motion; and Fierro does not contend on appeal the trial court erred in denying a motion to amend.

also contended he had made a prima facie showing of malice and that the governmental immunity provisions cited by the County were inapplicable.

In a final section of the opposition memorandum, Fierro requested, as an alternative to denying the motion, that the trial court grant a continuance to allow him to conduct discovery to overcome anticipated hearsay objections to his declaration (which recited conversations he had with other law enforcement officers and prosecutors) and the two other declarations filed with his opposition. However, Fierro did not file a separate noticed motion to permit discovery.

In reply papers in support of its special motion to strike, the County emphasized the exhibits Fierro attached to his opposition declaration confirmed the information in the ORWITS database—that he had "allegedly failed [to] include potentially exculpatory evidence in [his] report in the case of People v. Guadarrama"—was true and, therefore, not actionable under any of Fierro's theories of liability. That is, Fierro had been investigated, following a report by a trial deputy of potential misconduct, for lying on a report, attempting to minimize or distort evidence and providing false trial testimony; and the disposition reached by the administrative review of his alleged misconduct was "Not Sustained," which the document distinguished from "Unfounded"[7] and "Exonerated,"[8] and defined

_____

[7] The notification of complaint disposition sent to Fierro defined "Unfounded" as, "When the investigation discloses that the alleged act(s) did not occur or did not involve department personnel."

[8] The notification of complaint disposition defined "Exonerated" as, "When the investigation discloses that the

as "When the investigation discloses that there is insufficient evidence to sustain the complaint or fully exonerate the employee." Concurrently with its reply memorandum, the County filed objections to portions of Fierro's declaration and attached exhibits, as well as to several paragraphs in the declarations of two witnesses submitted by Fierro, on a variety of grounds, including that Fierro's recitation of conversations with prosecutors and law enforcement officers constituted inadmissible hearsay.

5. *The Trial Court's Ruling*

Following a hearing on March 12, 2020 the trial court granted the County's requests for judicial notice, sustained in part and overruled in part the County's objections to Fierro's opposition evidence and granted the County's special motion to strike Fierro's complaint. The court awarded the County $3,850 in attorney fees and costs.

Judgment was entered in favor of the County on March 26, 2020. Fierro filed a timely notice of appeal.

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 425.16, subdivision (b)(1), provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has

---

alleged act occurred, but that the act was justified, lawful and/or proper."

10

established that there is a probability that the plaintiff will prevail on the claim."

Pursuant to section 425.16, subdivision (e), an "'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

In ruling on a motion under section 425.16, the trial court engages in a two-step process.  "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16.  [Citation.]  If the defendant makes the required showing, the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384; accord, *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)  In making its determination the court must consider the parties' pleadings and affidavits or declarations describing the facts on which liability or defenses are predicated.  (§ 425.16, subd. (b)(2).)  "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that

11

arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted; accord, *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim." (*Park, supra,* 2 Cal.5th at pp. 1062-1063.) Thus, "[t]he defendant's first-step burden is to identify the activity each challenged claim rests on and demonstrate that that activity is protected by the anti-SLAPP statute. A 'claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted.'" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884 (*Wilson*); accord, *Park*, at p. 1060.) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.'" (*Wilson*, at p. 884; accord, *Park*, at p. 1063.)

"As to the second step, a plaintiff seeking to demonstrate the merit of the claim 'may not rely solely on its complaint, even if verified; instead, its proof must be made upon competent admissible evidence.'" (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.) "'We have described this second step as a "summary-judgment-like procedure." [Citation.] The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's

12

evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law.'" (*Ibid.*; see *Taus v. Loftus* (2007) 40 Cal.4th 683, 714 [the court should grant the section 425.16 motion "'if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim'"].)[9]

We review de novo an order granting or denying a special motion to strike under section 425.16. (*Wilson, supra*, 7 Cal.5th at p. 884; *Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940; *Park, supra*, 2 Cal.5th at p. 1067.)

2. *Each of Fierro's Causes of Action Arises from Protected Activity*

Each of the four causes of action in Fierro's complaint is expressly based on the disclosure to third parties of information contained in the ORWITS database. The declarations submitted in support of the County's special motion to strike establish that all disclosures were to prosecutors or other law enforcement personnel in connection with ongoing or anticipated criminal proceedings. Addressing this evidence, Fierro acknowledges, as he must, that in general all such communications are protected activity within the meaning of section 425.16, subdivision (e)(2)

---

[9] The record on appeal contains a notice of ruling prepared by counsel for the County but not a minute order from the March 12, 2020 hearing. The reporter's transcript does not include an explanation by the court of its ruling granting the motion, but the court's questioning of Fierro's counsel during the hearing suggests the court rejected Fierro's reliance on *Flatley, supra*, 39 Cal.4th 299, as it related to step one of the anti-SLAPP analysis, and found the litigation privilege applicable to bar Fierro's claims under step two.

and (4).  (See, e.g., *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["[c]ommunications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b), . . . [and] are equally entitled to the benefits of section 425.16," internal citations and quotation marks omitted]; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 408-409 [the anti-SLAPP statute protects not only litigants, but their attorneys' litigation-related statements; "'[u]nder the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute'"]; *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480 ["communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute"]; see also *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 [section 425.16 protects "communicative conduct such as the filing, funding, and prosecution of a civil action," including such acts when "committed by attorneys in representing clients in litigation"].)

Notwithstanding the general applicability of section 425.16 to disclosures such as those challenged in his complaint, citing *Flatley*, *supra*, 39 Cal.4th 299, Fierro contends the trial court erred in ruling the County had carried its first-step burden because the statements concerning him are "demonstrably and factually false" and thus not protected activity under

section 425.16, subdivision (e). Fierro misapprehends the meaning and scope of *Flatley* and its progeny.

In *Flatley*, a case involving a plaintiff's causes of action for civil extortion, intentional infliction of emotional distress and wrongful interference with economic advantage against an attorney who had threatened to publicize a rape allegation against the plaintiff if he did not pay a multimillion dollar settlement, the Supreme Court held, if "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley, supra*, 39 Cal.4th at p. 320;[10] accord, *Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 286-287 ["once the defendant has made the required threshold showing that the challenged action arises from assertedly protected activity, the plaintiff may counter by demonstrating that the underlying action was illegal as a matter of law because either the defendant concedes the illegality of the assertedly protected activity or the illegality is conclusively established by the evidence presented in connection with the motion to strike"].) However, as this court recently explained in *Towner v. County of Ventura* (2021) 63 Cal.App.5th 761, 771, "illegal" as used in *Flatley* was intended to mean violation of a criminal statute: "'[A] plaintiff's complaint *always* alleges a defendant engaged in illegal conduct in that it violated some

---

[10] The Supreme Court explained that activity illegal as a matter of law is not protected by the constitutional guarantees of free speech and petition and, therefore, cannot be the basis for a special motion to strike under section 425.16. (*Flatley, supra,* 39 Cal.4th at p. 305.)

15

common law standard of conduct or statutory prohibition, giving rise to liability, and we decline to give plaintiffs a tool for avoiding the application of the anti-SLAPP statute merely by showing any statutory violation.'"

Fierro's complaint does not allege the County's maintenance and use of ORWITS violated any statute, let alone a criminal statute.  Moreover, unlike the situation in *Flatley*, in which the defendant's illegal activity (extortion) had been established as a matter of law by the undisputed evidence before the trial court considering the special motion to strike (see *Flatley*, *supra*, 39 Cal.4th at p. 330 ["[e]valuating Mauro's conduct, we conclude that the letter and subsequent phone calls constitute criminal extortion as a matter of law"]), Fierro merely alleges the County's activity is unlawful, which the County vigorously denies.  Accordingly, that allegation, which has neither been conceded to be true nor conclusively established by undisputed evidence, is an issue for the second step of the anti-SLAPP analysis, which, in turn, requires Fierro to address the litigation privilege.  (*Id.* at p. 316 [if "a factual dispute exists about the legitimacy of the defendant's conduct, it cannot be resolved within the first step but must be raised by the plaintiff in connection with the plaintiff's burden to show a probability of prevailing on the merits"]; *Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 446 ["[w]e understand *Flatley* to stand for this proposition:  when a defendant's assertedly protected activity *may or may not be* criminal activity, the defendant may invoke the anti-SLAPP statute unless the activity is criminal as a matter of law"]; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 965 [same].)  In sum, the trial court correctly ruled the County carried its burden of demonstrating its

16

protected activity formed the basis for each of Fierro's causes of action.

      3. *The Litigation Privilege Bars Fierro's Lawsuit*

      Civil Code section 47, subdivision (b),[11] creates an absolute privilege for litigation-related communications:  "'Although originally enacted with reference to defamation [citation], the privilege is now held applicable to any communication, whether or not it amounts to a publication [citations], and all torts except malicious prosecution.  [Citations.]  Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.  [Citations.]  [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  [Citations.]' [Citation.]  Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation].  It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen v. Cohen*, *supra*,

---

[11]     Civil Code section 47 provides in part:  "A privileged publication or broadcast is one made:  [¶] . . . [¶]  (b)  In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure, except as follows . . . ."

17

37 Cal.4th at p. 1057; see *Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1241 ["'[t]he principal purpose of [the litigation privilege] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions'"]; *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1006.)

Moreover, "communications made in connection with litigation do not necessarily fall outside the privilege merely because they are, or are alleged to be, fraudulent, perjurious, unethical, or even illegal' assuming they are logically related to litigation." (*Blanchard v. DIRECTV, Inc.* (2004) 123 Cal.App.4th 903, 921; accord, *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 920; see *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956 ["the privilege extends even to civil actions based on perjury"]; *Kenne v. Stennis* (2014) 230 Cal.App.4th 953, 965 ["'[t]he litigation privilege has been applied in "numerous cases" involving "fraudulent communications or perjured testimony"'"].)

If applicable, as the trial court apparently ruled, the litigation privilege is a complete bar to Fierro's causes of action for defamation, negligent and intentional infliction of emotional distress and interference with prospective economic advantage and a proper ground for granting the County's special motion to strike.

Recognizing that the litigation privilege protects communications among prosecutors or between prosecutors and law enforcement personnel during or in anticipation of active criminal proceedings (e.g., *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 116 ["[m]any cases have explained that [Civil Code] section 47[,

18

subdivision] (b) encompasses not only testimony in court and statements made in pleadings, but also statements made prior to the filing of a lawsuit, whether in preparation for anticipated litigation or to investigate the feasibility of filing a lawsuit," internal quotation marks omitted]), Fierro notes, correctly, that the privilege protects only against communicative acts and not against noncommunicative conduct.  (E.g., *Kimmel v. Goland* (1990) 51 Cal.3d 202, 205, 209 [litigation privilege does not apply to unlawful recording, in anticipation of litigation, of confidential telephone conversations]; *Ribas v. Clark* (1985) 38 Cal.3d 355, 363-365 [privilege applies to testimony, which is communicative, but not to alleged earlier illegal eavesdropping, which is noncommunicative]; see *Action Apartment Assn., Inc. v. City of Santa Monica*, *supra*, 41 Cal.4th at p. 1248 ["[a] threshold issue in determining if the litigation privilege applies is whether the alleged injury arises from a communicative act or noncommunicative conduct"]; *Rusheen v. Cohen*, *supra*, 37 Cal.4th at p. 1058 ["[b]ecause the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative"].) According to Fierro, "the gravamen of this lawsuit is that Appellant is named on the ORWITS list, that the list accuses him of committing perjury and falsifying evidence, that the information on the list is false, and that Appellant has no opportunity to challenge or correct the false accusation. . . .  The existence of the ORWITS list itself is noncommunitive [*sic*] conduct."  (See *Rusheen*, at p. 1058 ["The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action.  [Citations.]  That is, the key in

19

determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature"].)

Fierro's attempt to avoid the bar of the litigation privilege fails. Whether or not a cause of action for inclusion in the ORWITS database without any dissemination of that information would be cognizable (apart from any issue of privilege),[12] Fierro

---

[12] To support his theory that merely being included in the ORWITS database is actionable, Fierro relies on *Elhady v. Kable* (E.D.Va. 2019) 391 F.Supp.3d 562, in which the plaintiffs alleged they had been listed in the Department of Homeland Security's Terrorist Screening Database (TSDB) and had suffered various negative consequences as a result. The district court held the program violated the plaintiffs' right to procedural due process because individuals were not told whether they were in the TSDB or provided with the information upon which their status might be based; there was no independent review of TSDB status by a neutral decision maker; and the government's standards for inclusion in the TSDB were vague. (*Id.* at pp. 580-582.) The court held the plaintiffs were not entitled to pre-deprivation notice, but were entitled to "post-deprivation process." (*Id.* at pp. 583-584.)

Although Fierro in his reply brief continues to cite the district court's *Elhady* opinion and commend it as "vital" to our analysis, a month before that brief was filed the Fourth Circuit reversed the district court's decision, rejecting "plaintiffs' basic contention . . .that inclusion in the TSDB stigmatizes them by associating them with terrorism." (*Elhady v. Kable* (4th Cir. 2021) 993 F.3d 208, 225.) The Court of Appeals held the plaintiffs' due process claim failed because there had been no public disclosure of the information in the database (only intragovernmental disclosures) and because reputation alone is not a "liberty" interest protected by the due process clause. (*Id.* at pp. 225-226.)

did not plead any such cause of action.  As to the causes of action he did allege—defamation, infliction of emotional distress and interference with prospective economic advantage—communication of the allegedly false material in the ORWITS database is an essential element of his claims.  As discussed, Fierro alleged with respect to his defamation cause of action that the purportedly false and defamatory statements "were made by Defendants to third parties including other law enforcement persons and lawyers"; as to his infliction of emotional distress causes of action that defendants "negligently spread false and defamatory rumors" about him and "intentionally spread false and defamatory rumors about him"; and for his interference cause of action that defendants "distributed to third parties false information," "illegally shared false information" and "actively and intentionally through surreptitious contacts and correspondence with employers have made false and defamatory statements."[13]

To be sure, as the Supreme Court acknowledged in *Jacob B. v. County of Shasta, supra*, 40 Cal.4th at page 957,

---

[13]     Notwithstanding the reference in his complaint to "third parties," Fierro did not proffer any evidence in opposition to the County's motion that information from the ORWITS database had been communicated to anyone but prosecutors and law enforcement personnel or for reasons other than pretrial and trial-related activities; and he did not argue in the trial court, and does not argue on appeal, that the litigation privilege is inapplicable for that reason.  In particular, Fierro did not suggest information from ORWITS that purportedly led to his failure to be hired by the Los Angeles County Public Defender's Office or the Los Angeles County Sheriff's Department had been disclosed other than in a litigation context.

21

accessing information stored in a computer database is noncommunicative conduct. But the Court continued, "[B]ecause 'the cause of action is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act.'" (*Ibid*.; accord, *Rusheen v. Cohen, supra*, 37 Cal.4th at p. 1052.)

    4. *The Trial Court Did Not Abuse Its Discretion in Denying Fierro's Belated Ex Parte Motion for Discovery*

        a. *Procedural background*

On November 11, 2019, two weeks after the County had filed its special motion to strike, Fierro served written discovery (special interrogatories) on defendants. The County served written responses on December 12, 2019, objecting to the discovery based, in part, on section 416.25, subdivision (g), which stays all discovery upon the filing of a special motion to strike.

As discussed, in his opposition to the special motion to strike filed December 20, 2019, Fierro requested, as an alternative to the court denying the motion, that the matter be continued and he be permitted to depose several witnesses in order to avoid likely hearsay objections to portions of the declarations (including Fierro's) submitted with the opposition to the motion. On December 27, 2019 the County filed its reply in support of the special motion to strike and, as predicted by Fierro, objected to significant portions of the opposition declarations.

At the originally scheduled hearing on the special motion to strike on January 6, 2020, Judge Peter Hernandez recused himself and continued the hearing on the motion to February 26, 2020. Counsel for Fierro and the County were present at the

January 6, 2020 hearing. Fierro did not request authorization to conduct discovery.

On January 22, 2020 Fierro filed an ex parte motion to take depositions and to compel the County to respond to written discovery. Fierro asserted discovery was necessary "to deal with" the hearsay objections the County had interposed to the declarations submitted with Fierro's opposition papers. The County opposed the ex parte request. At a hearing on January 23, 2020 Judge Gloria White-Brown denied the ex parte motion, ruling Fierro should have filed a noticed motion to request discovery.[14]

b. *Fierro failed to properly seek discovery*

Section 425.16, subdivision (g), provides, "All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section. . . . The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision." Orders granting or denying discovery pursuant to section 425.16, subdivision (g), are reviewed for an abuse of discretion. (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 692; *Contemporary Services Corp. v. Staff Pro Inc.* (2007) 152 Cal.App.4th 1043, 1061.)

A trial court does not abuse its discretion by refusing to grant an ex parte application seeking discovery "when section 425.16, subdivision (g) unequivocally requires a noticed

---

[14] Judge White-Brown disclosed at the hearing that her daughter is a deputy district attorney in Los Angeles County. Judge White-Brown subsequently recused herself; and the case was transferred to Judge Michael P. Vicencia, who heard the special motion to strike.

motion for such requests." (*Contemporary Services Corp. v. Staff Pro Inc.*, *supra,* 152 Cal.App.4th at p. 1062 [no abuse of discretion in denying ex parte application for discovery under section 425.16, subdivision (g)]; accord, *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1247-1248 [plaintiff's discovery request "was not authorized under section 425.16, subdivision (g) because it was not made by noticed motion"].)

Even if an ex parte request for discovery under section 425.16, subdivision (g), were permissible, however, Fierro failed to make "an affirmative factual showing in a declaration containing competent testimony based on personal knowledge of irreparable harm, immediate danger, or any other statutory basis for granting relief ex parte," as required by California Rules of Court, rule 3.1202(c). As discussed, when preparing his opposition to the County's special motion to strike, Fierro recognized that significant portions of his declaration and those of his two witnesses were subject to hearsay objections. Nothing prevented Fierro from filing a noticed motion seeking discovery at that time to address the evidentiary issues he anticipated, even if it would have been necessary to accompany the motion with an ex parte request for an early hearing date. The trial court acted well within its discretion in denying the discovery request.

## DISPOSITION

The judgment is affirmed.  The County is to recover its costs on appeal, including attorney fees in an amount to be determined by the trial court.


PERLUSS, P. J.

We concur:


FEUER, J.


IBARRA, J.*

---

*       Judge of the Santa Clara Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25