Filed 7/24/24  Cuevas v. Centurion Protection Services CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| WALTER CUEVAS, | B333621 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. 21STCV41627) |
| CENTURION PROTECTION SERVICES et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Briggs Law, Cory J. Briggs and Nora Pasin for Defendants and Appellants.

Gutierrez Derham Law Firm and Matthew Gutierrez for Plaintiff and Respondent.

\* \* \* \* \* \*

After a former employee sent a text message to a former client asking to "meet up" to discuss the former employee's pending lawsuit against his employer, the employer cross-claimed against the former employee for, among other claims, interfering with its contractual relations, interfering with prospective economic advantage, defamation, and libel. The trial court struck certain paragraphs from the employer's claims after concluding that the text message at issue in those paragraphs constituted "protected activity" under our anti-SLAPP law (Code Civ. Proc., § 425.16)[1] and that the employer had not made a showing that the four claims had minimal merit. Because this ruling was correct, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

### I. Employer Hires Then Fires Former Employee, and Employee Sues

#### A. *Employment relationship*

Centurion Protection Services (Centurion) is a "private-security firm providing customized protection and bodyguard services to high-profile clients." Centurion's CEO is Richard Ray Dudgeon, and its secretary is Tom Rogers.

In June 2019, Centurion hired Walter Cuevas as one of its bodyguards. Because Cuevas represented that he had worked as

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

"SLAPP" is short for "strategic lawsuit against public participation."

a firefighter, Centurion "provided him access to its high-profile clientele and paid him at a higher rate of pay to reflect his alleged experience." As part of his employment, Cuevas executed a nondisclosure agreement that prohibited him from disclosing information regarding Centurion or its clients.

Cuevas provided services through Centurion to actor-comedian Kevin Hart and his wife.

In November 2020, Centurion learned that Cuevas "had mispresented his experience as a firefighter." Shortly thereafter, on November 15, 2020, Centurion terminated Cuevas's employment.

### B. *Employee's lawsuit*

In November 2021, Cuevas sued Centurion, Dudgeon, and Rogers. In the operative first amended complaint, Cuevas brought 10 claims for various violations of the Labor Code, for installing a tracking device on his personal vehicle, and for intentional and negligent infliction of emotional distress.[2]

## II. Employee's Post-Lawsuit Conduct, Prompting Employer to Cross-Claim

### A. *Employee's post-lawsuit conduct*

In January 2021, Cuevas "made various statements to third-parties" disclosing confidential information.

---

[2] More specifically, Cuevas alleged claims for (1) violation of the Private Attorney General Act (Lab. Code, § 2699 et seq.); (2) failure to pay overtime wages; (3) failure to reimburse or indemnify for work-related expenditures; (4) failure to provide meal and rest breaks; (5) waiting time penalties; (6) penalties under Labor Code section 1198.5, subdivision (k); (7) penalties under Labor Code section 226, subdivision (f); (8) intentional infliction of emotional distress; (9) violation of Penal Code section 637.7; and (10) negligent infliction of emotional distress.

3

On August 24, 2022, Cuevas attempted to call Kevin Hart. When no one answered, he sent a text message to Hart's wife that stated:

> "Hey ma'am sorry to bother, it's walter [Cuevas]. I used to work for you guys. I was calling because there is a ongoing case with someone we both know that decided to put my family in danger. The issue is if it escalates anymore it will end up dragging kevin into it and ultimately that night. I apologize for dropping this out of no where on you. If you and kevin would like to meet up so I can explain the situation better please let me know. God bless you guys."
> (Grammatical and punctuation errors in original.)

## B. *Employer's cross-claims*

In April 2023, Centurion and Dudgeon (collectively, Centurion) filed a cross-complaint against Cuevas. In the operative second amended cross-complaint, Centurion alleged four claims tied to the text message for (1) intentional interference with contractual relations, (2) intentional interference with prospective economic advantage, (3) defamation, and (4) libel.[3] In a paragraph set forth as part of its general allegations and repeated four more times in support of each claim, Centurion alleged that Cuevas's August 24, 2022 text "message referenced [his] pending lawsuit against [Centurion], made an outlandish and unfounded claim that [Centurion] had

---

[3] Centurion and Dudgeon also alleged claims for (1) breach of the nondisclosure agreement (arising out of Cuevas's alleged disclosures of confidential information), and (2) intentional misrepresentation (arising out of Cuevas's statement about being a firefighter). Because these claims are not implicated by the anti-SLAPP motion in this case, we do not discuss them further.

put his 'family in danger' and threatened to disclose personal, private information of the client that Cuevas had learned of during his employment unless the client and his wife met with him to discuss the litigation." Centurion further alleged that the text message "was intended to essentially accomplish . . . three things . . .—(1) disrupt and interfere with [Centurion's] ongoing business relationships, in particular with [Hart], (2) tarnish [Centurion's] reputation with [Hart] in order to disrupt and interfere with [Centurion's] future business relationships, and (3) coerce and leverage [Hart] to persuade [Centurion] to settle the underlying litigation and pay Cuevas."

### III. Anti-SLAPP Litigation

In September 2023, Cuevas filed a motion under our anti-SLAPP law asking the trial court to strike the five paragraphs from the cross-complaint regarding the text message. Centurion filed an opposition to the motion, which was accompanied by a declaration from Dudgeon that (1) explained Centurion's business, (2) authenticated and attached the nondisclosure agreement, and (3) denied ever putting Cuevas's family in danger. Cuevas filed a reply.

After holding a hearing in October 2023, the trial court issued a ruling granting the anti-SLAPP motion and struck the text message-related paragraphs supporting Centurion's claims for intentional interference with contractual relations, intentional interference with a prospective economic advantage, defamation, and libel. The court ruled that the paragraphs all involved activity "protected" by the anti-SLAPP law because they "concern statements made in connection with pending litigation"; specifically, the text message "was explicitly connected to Cuevas's attempt to gather evidence in support of his pending

5

claims in this action." The court further ruled that Centurion had not carried its burden of showing that the four affected claims had minimal merit because it did "not present evidence" and merely relied on its "unverified pleading" and "argument."

Centurion filed this timely appeal.

## DISCUSSION

Centurion argues that the trial court erred in granting Cuevas's anti-SLAPP motion and striking the five paragraphs in its cross-complaint regarding Cuevas's text message. We independently review a trial court's grant of an anti-SLAPP motion. (*Park v. Board of Trustees of California State Univ.* (2017) 2 Cal.5th 1057, 1067 (*Park*).)

### I.     Pertinent Anti-SLAPP Law

"The anti-SLAPP law 'provides a procedure for weeding out, at an early stage, *meritless* claims [or allegations] arising from' activity that is protected by the law. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Accordingly, a trial court tasked with ruling on an anti-SLAPP motion must ask two questions: (1) has the moving party 'made a threshold showing that the challenged cause of action [or allegation] arises from protected activity' (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056), and, if so, (2) has the nonmoving party 'established . . . a probability that [it] will prevail' on the challenged cause of action by showing that the claim has 'minimal merit.'" (*Abir Cohen Treyzon Salo, LLP v. Lahiji* (2019) 40 Cal.App.5th 882, 887; *Lee v. Kim* (2019) 41 Cal.App.5th 705, 720-721; *Navellier v. Sletten* (2002) 29 Cal.4th 82, 93-94; § 425.16, subd. (b)(1).)

In assessing whether the challenged cause of action or portion thereof constitutes protected activity (the first question), a court must ask "two subsidiary questions:  (1) What conduct

6

does the challenged cause of action 'arise[] from'; and (2) is that conduct 'protected activity' under the anti-SLAPP [law]?" (*Mission Beverage Co. v. Pabst Brewing Co., LLC* (2017) 15 Cal.App.5th 686, 698.)

In evaluating the first subsidiary question, a cause of action "arises from" protected activity when it is "based on" or "its elements arise from" protected activity—that is, when the protected activity "itself" is the """principal thrust or gravamen""" or "'core injury-producing conduct'" warranting relief. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009, 1015 (*Bonni*); *Park, supra*, 2 Cal.5th at p. 1060; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 134.) In evaluating this first subsidiary question, a trial court must consider "the 'pleadings'" as well as the "'supporting and opposing affidavits stating the facts upon which the liability or [a] defense is based,'" although the pleadings are of primary importance because the plaintiff is the architect of their own complaint, such that the core injury-producing conduct at issue in a case is primarily a function of """what is pled—not what is proven.""" (*Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 936-937; *Comstock v. Aber* (2012) 212 Cal.App.4th 931, 942; § 425.16, subd. (b)(2).)

In evaluating the second subsidiary question, the anti-SLAPP law itself defines four categories of protected activity. (§ 425.16, subd. (e); *City of Montebello v. Vasquez* (2016) 1 Cal.5th 409, 422.) One is pertinent here: "[A]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." (§

7

425.16, subd. (e).)  Although "[n]ot all . . . conduct in connection with litigation . . . is protected" (*California Bank Specialists Medical Group v. Rand* (2008) 160 Cal.App.4th 1032, 1037; *Optional Capital, Inc. v. DAS Corp.* (2014) 222 Cal.App.4th 1388, 1400), """"communications preparatory to or in anticipation"""" of litigation (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268 (*Neville*), quoting *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115) and communications attendant to ongoing litigation—including formal discovery requests, more informal attempts to speak with potential witnesses to litigation, and missives notifying interested persons of ongoing litigation— are "made in connection" with issues under judicial review (*Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 538 [issuance of subpoena to obtain discovery in ongoing lawsuit]; *Neville*, at pp. 1267-1268 [communications with "potential witnesses"]; *Contemporary Services Corp. v. Staff Pro, Inc.* (2007) 152 Cal.App.4th 1043, 1053-1054 (*Contemporary Services*) [same]; *Healy v. Tuscany Hills Landscape & Recreation Corp.* (2006) 137 Cal.App.4th 1, 3-6 [letter to nonparties advising them of ongoing litigation]; *Contemporary Services*, at pp. 1053-1055 [same].)

## II.    Analysis

### A.    *Do the challenged paragraphs involve "protected activity"?*

We independently agree with the trial court that the five paragraphs Cuevas challenges from Centurion's operative cross-complaint arise from protected activity.  As noted above, "protected activity" includes communications made to potential witnesses in litigation.  (*Neville, supra,* 160 Cal.App.4th at pp. 1267-1268; *Contemporary Services, supra,* 152 Cal.App.4th at pp.

8

1053-1054.)  The five paragraphs at issue each allege that Cuevas sent a text message referring to his "pending lawsuit against [Centurion]" and urging Hart's wife and Hart himself to "me[e]t with [Cuevas] to discuss the litigation."  Thus, the conduct alleged in these paragraphs—namely, sending a text message to potential witnesses to discuss the events at issue in ongoing litigation—constitutes protected activity.  What is more, Cuevas's act in sending the text message is the "core injury-producing conduct" underlying Centurion's intentional interference and defamation-related claims because the content of that text message is what Centurion alleges damaged its relationship with Hart and with potential future clients, and is what Centurion alleges contains a false (and hence defamatory and libelous) statement about making threats to Cuevas's family.

Centurion resists this conclusion with what boils down to three groups of arguments.

First and foremost, Centurion argues that what is *most important* about Cuevas's text message is the harm it has done to Centurion's current and future business arrangements and the harm attendant to the false representation that Centurion threatened Cuevas's family; thus, Centurion urges, the text message's "mention of litigation" is merely "passing" and hence "incidental background" rather than "core injury-producing conduct."  To be sure, courts applying the anti-SLAPP law continue to draw a distinction between acts that "supply the elements of a claim" on the one hand, and acts that "are incidental background" on the other.  (*Bonni*, *supra*, 11 Cal.5th at p. 1012.)  But that distinction is irrelevant here, where Centurion alleges a *single act*—that is, Cuevas's act in sending the text message to Hart's wife—which is the very act that causes the

9

interference with its current and future business arrangements *and* that constitutes defamation and libel. Put differently, the fact that Centurion is suing Cuevas for what he communicated in *parts* of his text message does not somehow negate the fact that the text message is the basis for Centurion's claims or the fact that it is a communication connected to ongoing litigation (and hence activity protected by the anti-SLAPP law). Similarly, the fact that Centurion alleges that the content of the text message is economically harmful and false does not somehow remove it from the realm of protected activity; indeed, only conduct that is conclusively or concededly *illegal* is deemed to be removed from the ambit of the anti-SLAPP law's protection (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 319), and Centurion does not—and cannot—make any claim of such definitive illegality in this case.

Second, Centurion argues that the trial court erred in relying on the text message because it (1) did not explicitly spell out *which* lawsuit was pending between Cuevas and Centurion, and (2) was incomplete under Evidence Code section 356. These arguments border on the frivolous. The record only suggests a *single* lawsuit between Cuevas and Centurion, so Centurion's insinuation that the text message could be referring to some other lawsuit between these parties is purely speculative. Along the same lines, nothing in the record indicates that there was some other part of the text message conversation that is missing; indeed, *Centurion* chose to rely on only that text message, so is not in a position to now complain that the message was part of some broader back-and-forth conversation.

Third and lastly, Centurion argues that this case is analogous to *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999 and *Gazal v. Echeverry* (2024) 101 Cal.App.5th 34. These cases are

10

inapt. In *Starr*, the court ruled that "[m]isconduct in the administration of a trust and preservation of trust assets" is not protected activity under the anti-SLAPP law (*Starr*, at p. 1021); in *Gazal*, the court ruled that a church homily is not protected activity when the damage caused to the plaintiff arose from fraudulent conduct occurring after the homily (*Gazal*, at pp. 37, 41). Unlike *Starr* and *Gazal*, the harm Centurion complains of in its interference and defamation-related claims is harm arising from the very same text message sent to enlist aid from potential witnesses in ongoing litigation.

**B.** ***Has Centurion established that its four challenged claims have "minimal merit"?***

We independently agree with the trial court that Centurion did not carry its burden of producing evidence to support each and every element of its four challenged claims.

To prove intentional interference with contractual relations, a plaintiff must show "'(1) a valid contract between a plaintiff and a third party; (2) defendant's knowledge of th[e] contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) *resulting damage*.'" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55, italics added.) To prove intentional interference with a prospective economic advantage, the plaintiff must prove (1) """"an economic relationship between the plaintiff and some third party"""""; (2) "'the defendant's knowledge of the relationship'"; (3)(a) "the defendant engaged in conduct that interfered with that relationship and (b) the defendant's conduct was 'independently wrongful'"; (4) "the defendant either intended to interfere with the relationship or 'knew that the interference

11

was certain or substantially certain to occur as a result of its' conduct"; and (5) "*the defendant's acts 'proximately caused' 'economic harm to the plaintiff.'*" (*Drink Tank Ventures LLC v. Real Soda in Real Bottles, Ltd.* (2021) 71 Cal.App.5th 528, 537-538, italics added; *Ixchel Pharma, LLC v. Biogen, Inc* (2020) 9 Cal.5th 1130, 1141; *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1164-1165.) Here, Centurion adduced no evidence whatsoever indicating whether and how its current contracts or future business prospects were damaged by Cuevas's text message. This omission is fatal.

To prove defamation or libel, a plaintiff must show "'([1]) a publication that is ([2]) false, ([3]) defamatory, and ([4]) unprivileged, and that ([5]) has a natural tendency to injure or that causes special damage.'" (*Taus v. Loftus* (2007) 40 Cal.4th 683, 720; see Civ. Code, §§ 44, 45, 45a.) Here, Centurion adduced no evidence whatsoever on any element *except* the second element of falsity. These omissions are fatal.

Centurion makes two arguments in response. First, it argues that it is "not required to prove each cause of action to the trial court." That assertion is legally incorrect. Second, Centurion argues that its opposition included Dudgeon's declaration and a copy of the nondisclosure agreement. This is true, but these items of evidence—the only Centurion proffered—do not respond to many elements of its challenged claims.

12

## DISPOSITION

The order is affirmed.  Cuevas is entitled to his costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
HOFFSTADT


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

13